Henry Epstein, J.
The International Longshoremen’s Association (hereinafter designated as “ILA”), its so-called affiliate, Local 333 ILA, and some 14 “loyal” members of the ILA and of Local 333 ILA here bring suit against the officers and members of the former ILA. Local 333, now affiliated with the American Federation of Labor (hereinafter referred to as Local 333 AF of L), and depositories of the funds and treasury of the defendant Local 333 AF of L are joined as defendants. The relief sought is recovery of records, books, properties — and above all, the funds and treasury assets of the defendant Local 333 AF of L. Captain William Bradley is president of the ILA, an unincorporated association of local unions in ports of the United States and Canada. Bradley also sues as president of a so-called Local 333 ILA, whose actual status is revealed in the evidence taken at this trial. There are some individual members of the old ILA Local 333 Avho are named as plaintiffs. They and some relatively few (perhaps a few hundred out of over 3,500 members) seek to recover all the funds of the entire membership which is now an affiliated member union of the AF of L. The funds are quite substantial, and the recovery here sought would destroy the defendant Local 333 AF of L while furnishing Bradley, the ILA and the “paper” Local 333 (ILA) with the means of revival and also making it possible for Bradley and the ILA to meet obligations to the United Mine Workers of over $300,000 in loans.
Some background material, drawn from the evidence at the trial, will be helpful. In 1937, there was a merger of Local *614 933-3, the predecessor of the ILA 333 defendant (now Local 333 AF of L) with the Local 933-6 of the Associated Marine Workers — both operating largely in New York harbor and waterways of New York State. A charter was received from the ILA November 17, 1937. By 1954, the membership of this Local 333 rose to over 3,500 members. In 1953, grave charges of corrupt influences, gangster controls and improper conduct, among others, were made against the ILA by the New York State Crime Commission Report. The AF of L ordered the ILA to answer its own charges of a like character. This order was dated February 3, 1953 and was followed by expulsion of ILA from the AF of L on September 22, 1953. In May of 1954, Local 333 voted to disaffiliate and leave the ILA. It felt its very existence to be at stake. On May 28, 1954, the membership voted to join the United Mine Workers. The evidence reveals that plaintiff Bradley gave his blessing to this marriage and certainly he gave no evidence of disapproval as long as the old Local 333 remained in the United Mine Workers. The reasons are not far to seek. Beginning in December, 1953, after its expulsion from the AF of L, the United Mine Workers loaned to the ILA by 1957 a total of $370,000. These loans started with $50,000 in December, 1953; $100,000 in January, 1954; and continued through July, 1957 when a loan of $25,000 was made. Local 333, formerly of ILA, left the United Mine Workers in December of 1954 and on December 20, 1954 received a charter from the AF of L. Then, and then only did Bradley demand the return of all the property, assets and treasury of Local 333. This demand was made on March 10, 1955, after the acceptance of the Local into the AF of L and a charter received from that parent body. Some of the old ILA locals remained in the fold of the United Mine Workers.
There are some other significant facts to be considered. Under the constitution of the ILA, no local might withdraw so long as 10 members objected thereto; if less than 10 so remained and the membership seceded or withdrew, then the assets, treasury, etc, “revert to the I. L. A.” (Art. XVI, § 9; art. XXVI, § 5; art. XII, § 5.) Disposition of the funds is vested in the executive council of the ILA. So, too, did the ILA Local 333 constitution, obtained from the ILA, provide in section 2 of article I that no withdrawal could take place as long as 10 members in good standing objected to such move. It is on these provisions as binding contract obligations that plaintiffs rely most heavily. And they are not without some support from decisions in courts of this and other States. Yet a study of *615 these cases reveals factual differences sufficient to rule them out as authorities to support plaintiffs’ position herein. (Brownfield v. Simon, 94 Misc. 720, affd. 225 N. Y. 643 [1917]; Overton-Bey v. Jacobs, 131 N. Y. S. 2d 31 [1954]; Henry v. Coco, 25 Ohio App. 487; Fitzgerald v. Abramson, 89 F. Supp. 504; Harker v. McKissock, 7 N. J. 323.)
What remained when Local 333 ILA defected and joined United Mine Workers? Nothing. No steps were taken either by the so-called dissenting minority or by the ILA to bar the defection, to recover the assets, or to interpose objections to their contract negotiations. What happened was that on July 13, 1957, after the present action had been initiated, Bradley paid (possibly out of funds available from the United Mine Workers loans) a head tax to the ILA for the minimum 10 members. He paid to the ILA, of which he was president, through himself as the nominal president of the “ paper 333 ” the sum of $193.50. The evidence reveals, and Bradley admitted, that since 1954 there have been no employees of Local 333 of the ILA. There were no collective agreements by said union since 1954. There have been no trustees of such a local since 1954. Nor did said “ local 333 ” of the ILA ever seek to intervene, either on its own, or through its alleged parent, the ILA, in any elections conducted by the National Labor Relations Board. As a matter of fact the credible evidence, including that of plaintiff Bradley, supports the conclusions: That Bradley discussed the likelihood of the ILA joining the United Mine Workers; that Bradley and O’Hare (president of Local 333, AF of L, formerly of ILA and United Mine Workers) discussed the proposed affiliation of Local 333 with the United Mine Workers; that Bradley addressed the members of Local 333 on the subject on April 12, 1954; that, in May, 1954 at a meeting at the Hampshire House in New York City, the entire question of affiliating with the United Mine Workers was canvassed after a discussion of possible union with the National Maritime Union. A further and persuasive fact, operating against the equitable relief sought herein, is that Bradley requested and O’Hare agreed to postpone the tally of ballots of Local 333’s referendum on the United Mine Workers affiliation until after an National Labor Relations Board election in which the TLA was involved. It is significant, too, that the ILA has not proceeded against other locals which defected and remained with the United Mine Workers. Captain Bradley was in an unenviable position. He had fallen heir to a corrupt regime and was trying to maintain a relic in a new era of trade union history. It is not to his discredit that his efforts must fail.
*616 Two significant facts stand out: One is that the old Local 333 now affiliated with the AF of L is an active, functioning union, whose treasury derives from its own members’ dues; the other is that the Local 333 of the ILA is but a name, with no substance and the complete tool of Captain Bradley. The slough of despond into which the ILA has fallen is not the fault of Bradley. But he cannot be permitted to use his official position to undermine the forthright trade union status of Local 333 AF of L. This union has ended all hopes of ever reaffiliating with the ILA, even should the ILA eventually succeed in returning to the AF of L. The last application for such return was made on January 8, 1959. This action is an attempt to raid the treasury of the AF of L affiliate Local 333, formerly of ILA and United Mine Workers.
This court holds, if it be necessary to achieve the result which the facts and the conscience of this court dictate, that the older union constitutional provisions, permitting 10 dissident members out of thousands, or the parent union, to seize the treasury of a local union, are contrary to sound public policy and therefore unenforcible. To hold otherwise would be to aid a forfeiture which courts will not mandate. (Schnitzer v. Fruehauf Trailer Co., 283 App.,Div. 421.) Bradley cannot now be heard to complain of and undo that which he once aided and which he for almost a year tacitly favored. This was while he was being heavily endowed by the United Mine Workers during a period in which the old Local 333 ILA had been within the United Mine Workers fold. (Giles Dyeing Mach. Co. v. Klauder-Weldon Dyeing Mach. Co., 233 N. Y. 470, 477.) Nor is there an absence of cases of recent origin to support defendants’ position herein. (Crawford v. Newman, 13 Misc 2d 198; Alvino v. Carraccio [Dec. Term, 1957, Common Pleas, Pa., affd. April 23, 1959]; Olson v. Carbonaro [Cook County Superior Ct., 111., affd. Court of Appeals, March 31,1959].)
, Recognition of the need for principles of stare decisis does not and should not constitute a rule against the re-examination and possible qualification of a precedent. The courts must always be willing to face and squarely decide novel questions particularly where the factual background calls strongly for a departure from a theretofore accepted rule. The facts in the instant case call for such a qualification of tuhat plaintiffs press as the decisive applicability of a line of cases dating from Brownfield v. Simon in 1916 (94 Misc. 720).
This court wishes here to express its appreciation to counsel for both parties for their lawverlike conduct of this trial and *617 the excellent quality of the briefs submitted both before and after trial.
The foregoing constitutes the decision of the court, findings of fact and conclusions of law having been waived.
Motion to dismiss complaint granted. Judgment for defendants.