[No. 37421. Department Two. July 15, 1965.]

KENNETH R. BOWMAN, *Respondent*, v. ROY MOE *et al.*, *Appellants.*[*]

[*]Reported in 404 P.2d 437.

*Vance, Davies, Roberts & Bettis*, by *J. Duane Vance*, for appellants.

*Paul D. Jackson* (of *Hatch & Jackson*), for respondent.

DONWORTH, J.—This is an appeal from a summary judgment in favor of the plaintiff, Bowman, who was the trustee of the Master Licensed Embalmers Union, Local 18189, appointed by the president of the AFL-CIO national organization under circumstances described below.

Appellants are defendants Moe and Pettinger, who were the president and secretary-treasurer, respectively, of Local 18189, which was an affiliate of AFL-CIO. The trial court granted to plaintiff Bowman a mandatory injunction directing appellants Moe and Pettinger to turn over to Bowman the books, charter, seal, cash, and all other properties of Local 18189, including $7,100 held by Moe and Pettinger in the form of 71 separate $100 bank drafts, which were made payable to each of the 71 members of Local 18189 who were in good standing as of February 1, 1963. Appellants have appealed from this summary judgment, but have turned over all the above-mentioned items to Bowman except the 71 drafts of $100 each. The drafts have never been delivered to the payees and are in the possession of this court. Only that portion of the injunctive order relating to the $7,100 in bank drafts is challenged on the appeal.

In his complaint, Bowman alleges two causes of action. First, he alleges that Moe and Pettinger are bound by their oath of office, and the constitutions of the local union and of the AFL-CIO, and the Rules Governing Directly Affiliated Local Unions,[1] and by the local union's charter issued by the AFL-CIO. He further alleges that the oath of office and these documents are in the nature of a contract and

---

[1]The Rules Governing Directly Affiliated Local Unions is an AFL-CIO promulgated body of rules imposed on all affiliated local unions as a condition of affiliation, and subject to change by the AFL-CIO at any time, without notice or agreement other than acquiescence.

that Moe and Pettinger violated their contractual obligations contained therein, and that, as a consequence, the local union was placed in a trusteeship and later the charter of Local 18189 was revoked by the AFL-CIO. He further alleged that, *by virtue of his appointment as trustee by the president of the AFL-CIO,* he is the only person presently authorized to have possession of any of the property of Local 18189, and that Moe and Pettinger wrongfully have refused to turn over the local union's property to him.

The second cause of action re-alleged all of the contractual obligations of the first cause of action, and then stated a claim in the nature of an illegal and improper disbursement of the $7,100 of union funds by appellants, contrary to their fiduciary duties as officers of Local 18189, even though appellants had been advised by respondent Bowman of the "illegality" of the disbursement.

The answer made by appellants Moe and Pettinger included several denials of respondent's allegations regarding the alleged nature of the obligations and violations thereof contained in the complaint. The answer further alleged an affirmative defense in the form of authorization by the local union membership for the disbursement of funds, after the membership had authorized the NLRB election to determine the issue of disaffiliation with the AFL-CIO.

Respondent Bowman moved for summary judgment and the affidavits of the parties and their attorneys in support of, and in opposition to, this motion were filed. The trial court found that there were no material facts at issue, awarded summary judgment to respondent Bowman, and issued the mandatory injunction referred to above.

The affidavits of the parties and their attorneys are in agreement concerning the facts set forth below. The sequence of events that occurred are:

(1) Appellant Roy Moe was duly elected president, and appellant Thomas Pettinger was duly re-elected secretary-treasurer of Local 18189 at a general meeting of the membership in November, 1962.

(2) Appellants Moe and Pettinger were sworn into office on December 3, 1962, at a general meeting of the local membership.

(3) At the meeting on December 3, 1962, the membership voted a directive to the executive board instructing it to explore ways and means of disaffiliating with the AFL-CIO.

(4) Acting on those instructions, the executive board sent secret ballots to each member asking him with what other international he might care to affiliate, or whether he would rather not affiliate with any international. Seventy ballots were mailed to the members and 59 thereof were returned with a recorded vote.

(5) January 7, 1963, at a regular meeting, the results of the poll were announced. There were 46 votes in favor of affiliating with the Teamsters' Union and 13 votes to remain with the AFL-CIO.

(6) January 29, 1963, the Trucking and Equipment Clerks, Report Clerks and Clerical Employees, Local Union 154, International Brotherhood of Teamsters, filed a petition before the National Labor Relations Board for an election and certification of representation with regard to the employees employed by the members of the King County Funeral Directors Association.

(7) February 1, 1963, in order to avoid seizure of funds then in the local union treasury, in the event the disaffiliation later occurred, and with full expectation that the membership would vote to disaffiliate, appellant officers Moe and Pettinger withdrew $7,100 of the union funds, leaving enough in the bank for operation of the local union prior to its anticipated dissolution. Individual drafts of $100 each were purchased from the Washington Federal Savings and Loan Association, payable to the individual union members.

(8) February 4, 1963, Teamster representatives presented to the membership of Local 18189, at a general meeting, a discussion of the "advantages" to be gained by affiliation with the Teamsters, and explained the rules of the Teamsters' International Union. At this same meeting, the Teamsters' International representative told the membership of

Local 18189 that the Teamsters could not and would not accept a transfer of the local union's treasury funds. The leadership of Local 18189 apparently then told the membership that the treasury funds in the amount of $7,100 were not needed to operate Local 18189 since it was certain to be dissolved by the AFL-CIO. The membership voted to disburse the funds to individual members in the form of individual drafts. The vote on this issue was 27 votes in favor of the distribution, and 23 votes against. This action by the membership is claimed by appellants to have ratified appellants' action of February 1, 1963, in withdrawing the $7,100 in the form of 71 separate bank drafts payable to 71 members in good standing as of February 1, 1963.

(9) February 5, 1963, the AFL-CIO was informed of the meeting and the pending disaffiliation, and the president immediately declared the local to be in the trusteeship of plaintiff-respondent, Bowman, who is the resident AFL-CIO regional representative. Respondent demanded all funds and property of the local, but appellants refused to surrender any funds, and agreed to surrender the union records only on the condition that, after a reasonable time to enable respondent to study and copy the records, they would be returned. Respondent refused to accept them on this condition, and renewed his unconditional demands, to which he has always received the same conditional refusal to surrender the property of the local.

(10) February 19, 1963, the AFL-CIO held a hearing in Seattle, at which it concluded that appellants had assumed office with the pre-arranged purpose of changing affiliation from the AFL-CIO to the Teamsters, and the trusteeship set up on February 5, 1963, was accordingly confirmed.

(11) March 8, 1963, the NLRB held an election to determine the collective bargaining agent for the employees of the members of the King County Funeral Directors' Association. Fifty-five of the 71 members were eligible to vote. Of the 55 members eligible to vote, the vote in favor of Teamsters Local 154 was at least 42, as respondent admits. (Appellants claim that 44 voted in favor of the Teamsters,

but we deem the difference immaterial.) Only 11 members voted to retain Local 18189, AFL-CIO, as bargaining agent for the bargaining unit. The certification of the Teamsters' Union as bargaining agent was made by the NLRB on March 18, 1963.

(12) After the NLRB election and certification, Local 18189 continued in existence for a short time. Then (for reasons not given, and apparently not deemed material to this case), on April 12, 1963, the AFL-CIO revoked the charter of Local 18189 and declared that all of its funds and property should be turned over to the AFL-CIO by respondent trustee to be held in trust by the AFL-CIO under the AFL-CIO constitution, the Rules Governing Directly Affiliated Unions, and the constitution of Local 18189, AFL-CIO.

Aside from these agreed facts, the affidavits supporting appellants' position also indicate that the membership of the local had been discussing possible disaffiliation beginning as early as 1954, and that the NLRB election (being administered by an impartial board) was the only way in which the membership believed it could avoid the charges of irregularity which would be made by the AFL-CIO if the membership tried to simply disaffiliate (withdraw the whole Local 18189 membership from the AFL-CIO affiliation) by a vote at a regular meeting of the local union conducted within its own bylaws and constitution. This statement was not controverted by respondent's affidavit.

Appellants' affidavits also state that Local 18189 was in no way indebted to the AFL-CIO, and that its members had always paid their own dues and expenses, out of which a per capita tax due the AFL-CIO had been paid in full. There were no outstanding loans owing by Local 18189 to the AFL-CIO. This statement was also not controverted by respondent's affidavit.

The affidavits supporting respondent's motion for summary judgment state that the action taken by the AFL-CIO in the declaration of the trusteeship of Local 18189 was based on fraud and breach of fiduciary responsibility on

the part of Moe and Pettinger, as officers of Local 18189, in that they were elected with the preconceived purpose of delivering the membership of the local union to the Teamsters, and that they had several secret meetings with the Teamsters after their election for that purpose. No particular facts or details of fraud are alleged. This allegation was controverted by appellant Moe's affidavit, which alleged that what was done was done at the behest of the majority of the membership of Local 18189.

The constitution of Local 18189 is included in the evidence before the court. Article 7, § 7, of that document provides:

> Whenever the charter or certificate of affiliation of the Union is revoked, or whenever the Union is voluntarily dissolved, all funds, property, books and assets, the charter or certificate of affiliation and the seal of the Union shall revert to the AFL-CIO and shall upon demand be turned over to a duly authorized representative of the President of the AFL-CIO.

Rule 24 of the AFL-CIO's Rules Governing Directly Affiliated Local Unions reads as follows:

> Whenever the charter or certificate of affiliation of a Directly Affiliated Local Union is revoked, or whenever such a local union is voluntarily dissolved, all funds, properties, books and assets, the charter or certificates of affiliation, and the seal, of such local union shall revert to the AFL-CIO and shall, upon demand, be turned over to a duly authorized representative of the President of the AFL-CIO. The AFL-CIO will hold all such funds, properties, books and assets in trust for an appropriate length of time with a view to the reconstitution of the defunct local union. If the Executive Council of the AFL-CIO decides that the reconstitution of the defunct local union is not feasible, then such funds, properties, books and assets shall be subject to such disposition as the Executive Council may determine. No Directly Affiliated Local Union shall disband or dissolve except with the approval of the President of the AFL-CIO.

The trial court ruled that there was no material issue of fact, and granted summary judgment for respondent. In order for the trial court to have found that there was no material issue of fact, it must have resolved the case before

reaching the issue concerning the fraud or breach of a fiduciary duty by appellants.[2] The parties have argued legal issues on this appeal which allow disposition without reference to that factual issue. Therefore, we address ourselves to only the legal issues raised by the parties.

Respondent argued that the disposition of the $7,100 in funds was controlled by the provisions in the constitution and bylaws of Local 18189, the constitution of the AFL-CIO, and the Rules Governing Directly Affiliated Unions.

Appellants have argued that the facts of this case present an exception to the enforcement of those provisions referred to by respondent. The legal basis for these exceptions are:

(1) The pro rata distribution of the local union funds was a valid use of the union funds, made at the request and with the approval of a majority of the quorum present at a regular business meeting, according to the provisions of Rule 32 of the Rules Governing Directly Affiliated Unions.

(2) The provisions in the documents which support the claim of the international union are invalid because they are against public policy.

With regard to this second argument, appellants urge that the provisions are against public policy because:

(a) They are forfeiture provisions, when, as here, the local owes no money or debt of any kind or nature to the AFL-CIO.

(b) The legal effect of the use of the forfeiture clause is to put a price on disaffiliation, contrary to the individual's rights provided for in RCW 49.32.020 and 29 U.S.C. 151, 401, in that this restricts and discourages the individual's full freedom of association, self-organization, and designation of representatives of his own choosing.

---

[2] The opposing affidavits clearly raise this mixed issue of fact and law. The AFL-CIO hearing purported to decide this issue, but the effect of these affidavits is to challenge its appropriateness, if it were to be considered binding on the parties to this case. See *Bradley v. O'Hare,* 11 App. Div. 2d 15, 202 N.Y.S.2d 141, at 158-159 (1960), wherein the party challenging such findings has the burden of proof.

Local 18189 has not attempted to invoke the authority of the courts to challenge the actions of the AFL-CIO president or the findings of the hearing. Instead, appellants have relied on what they believe were the rights of the dissident majority on these facts (regardless of the possible validity of such action by the AFL-CIO), and have tried to disburse the surplus in the local union treasury in pro rata amounts to each member of the local union in good standing as of February 1, 1963. In *Local 2618 of The Plywood and Veneer Workers etc. v Taylor,* 197 Wash. 515, 85 P.2d 1116 (1938), this court said:

> The cases of *Local No. 2508 Lumber & Sawmill Workers v. Cairns, ante* p. 476, 85 P. (2d) 1109, and *Lumber & Sawmill Workers Union No. 2623 v. International Woodworkers etc., ante* p. 491, 85 P. (2d) 1099, are decisive of the issues presented here. In those cases, the court applied what seems to be a universal rule with respect to funds and property acquired by voluntary associations:
> "No number of the members of the order less than the whole could, therefore, divert the funds to other uses than the uses defined in the constitution and laws of the order. The majority . . . can undoubtedly direct the use of the funds of the order for purposes of the order, and when there are two or more purposes for which the funds can be lawfully used, may select between them, but the majority cannot, against the will of the minority, lawfully divert such funds for uses other than those permitted by the constitution and laws of the order. This, as we understand the authorities, is the universal rule." *Grand Court etc. v. Hodel,* 74 Wash. 314, 133 Pac. 438, 47 L.R.A. (N.S.) 927.

We recognize that the law pertaining to labor union organization and membership rights has developed materially in certain areas relating to the question of the rights of the majority of a local union to retain funds in the local union treasury and transfer them to a new local union, or to disaffiliate with one parent union and affiliate with another, without suffering the loss of the local union's funds. But such rights exist only in certain circumstances. None of those circumstances have been shown to exist in this case. We believe that the rules of law discussed in the

Taylor case and cases cited therein still represent the basic rule and control the facts in this case. The various documents which constitute the contract between the parent union and the local union in this case do not give the majority any legal right to distribute the surplus funds in the local union treasury pro rata to the individual members, especially in view of the fact that some members remained loyal to Local 18189 and the AFL-CIO.

Appellants have argued that the funds no longer belonged to the local union because they were disbursed within the provisions of Rule 32 of the Rules Governing Directly Affiliated Unions, which rule provides for the manner of authorization of expenditures of union funds, and generally indicates what are appropriate union purposes.[3] All of the rules must be read together. Rule 24 provides that, in the event of dissolution or disaffiliation, the funds would be held by the parent union. Rule 32 applies to the normal operation of the local union and expenditure of funds during such operation. It does not authorize distribution of the funds pro rata to the membership, expressly or by implication. Indeed, in view of the provisions of other rules (such as Rule 24), the inference is clearly to the contrary.

As a part of this argument, appellants have urged that the purpose of Local 18189 was collective bargaining, and that the local could no longer carry out this purpose. It is further argued that, when the purpose of the local union fails, Rule 32 should be understood to authorize the winding up of the local union, a part of which is the pro rata distribution of its funds to the membership. As we have just discussed, Rule 32 does not relate in any way to the problems of "winding up" a local union. Parenthetically, we note that the constitution of Local 18189 lists many other

---

[3]Each local union shall set forth in its constitution or bylaws the procedure by which expenditure of its funds is to be authorized. The funds of the local union shall be expended only pursuant to such procedure, and shall be used only for the legitimate expenses of the local union and in furtherance of the objectives of the local union and of the AFL-CIO.

purposes than collective bargaining, although perhaps collective bargaining was the main purpose.

Appellants may have been intending to argue that "frustration of purpose" of the contract has relieved appellants and the local union from the provisions of the contract. Appellants have cited two cases, *Local 464, American Bakery & Confectionery Workers v. Hershey Chocolate Corp.*, 45 L.R.R.M. 2637 (Pa. Ct. Comm. Pl. 1960), and *Bradley v. O'Hare*, 188 N.Y.S.2d 124 (Sup. Ct. 1959), 44 L.R.R.M. 2088; revrs'd 11 App. Div. 2d 15, 202 N.Y.S.2d 141 (1960), 46 L.R.R.M. 2672; remanded 214 NY.S.2d 136 (Sup. Ct. 1961), 47 L.R.R.M. 2957. The *Hershey Chocolate* case has additional history in *Local 464, American Bakery & Confectionery Workers v. Hershey Chocolate Corp.*, 403 Pa. 44, 169 A.2d 54, 47 L.R.R.M. 2841 (1961), remanded 53 L.R.R.M. 2612 (Pa. Ct. Comm. Pl. 1963). Appellants argue that these cases show that the "frustration of purpose" doctrine[4] is applicable to the situation in which the local union cannot fulfill its function as bargaining agent. We believe it is obvious, from a careful reading of the above cited cases and the cases on which they rely, that one of the critical facts common to those cases is the fault of the parent union. As we noted in our earlier discussion, this is a circumstance which has not been shown to exist in the facts of the present case.

The "frustration of purpose" doctrine (or any other legal theory), which is used to relieve a party from the provisions of a contract, cannot be deliberately caused by the party claiming the benefit of the legal theory. See 6 Corbin, Contracts § 1353, pp. 455-58 (1962). In the present case, we have the bare facts that the majority of the membership rejected Local 18189, AFL-CIO as bargaining agent, and that this action had as its purpose the disaffiliation with the AFL-CIO. There is no contention that there was any fraud, corruption, or other fault on the part of AFL-CIO.

---

[4]The "frustration of purpose" doctrine may not be the appropriate legal theory to use. See *Bradley v. O'Hare, supra,* especially the appellate division opinion.

On such facts, this amounts to "frustration of purpose" by appellants and the majority of the membership of Local 18189.

Appellants have also argued:

(1) That Local 18189 owed no money to the AFL-CIO, hence the enforcement of the provisions of the contract giving the funds of the local union to the parent union are in the nature of a forfeiture, and

(2) That the effect of the provisions thereof invoked by the AFL-CIO are against the public policy of both the state and federal governments as expressed in RCW 49.32.020 and 29 U.S.C. §§ 151, 401, which provide that employees shall have the right to *freely* choose their representatives, because the effect of the provisions of the contract is to put a price tag on disaffiliation.

■ Substantially similar arguments were accepted by the trial court in *Bradley v. O'Hare, supra.* The appellate division reversed the trial court on these issues on appeal in *Bradley v. O'Hare,* 11 App. Div. 2d 15, 202 N.Y.S. 141 (1960). The reasons given by the appellate division opinion in rejecting those arguments are adopted by this court for rejecting appellants' arguments in this case. Nothing would be served by quoting, paraphrasing that discussion, or elaborating in our own language on our specific view of this problem. We believe that the provisions of the contract before us are not against public policy because they are relevant to the complex organizational structure of labor unions involved. We are not holding that such provisions serve some positive public policy—we simply hold that they are not void as against public policy.

After careful consideration of the several arguments advanced by the parties in the light of the decisions and legal writings referred to herein, we conclude that the trial court was correct in awarding summary judgment to respondent, and the summary judgment is, therefore, affirmed. However, in paragraph 2 of the injunctive order of the trial court, the clerk of the superior court is directed to deliver the 71 bank drafts to respondent. Since these drafts are payable

to each of the 71 individual members of former Local 18189 who were in good standing on February 1, 1963, respondent Bowman may encounter some practical problem in having the drafts canceled and a cashier's check issued by the Washington Federal Savings and Loan Association. For this reason, there is added to paragraph 2 of the trial court's injunctive order the following:

Respondent is authorized to take such steps as may be necessary and proper to obtain a cancellation of the 71 bank drafts issued by the Washington Federal Savings and Loan Association and to have issued, in lieu thereof, a cashier's check for $7,100 (less the customary bank charges, if necessary), payable to Kenneth R. Bowman as Trustee of Master Licensed Embalmers Union Local 18189 AFL-CIO.

It is so ordered.

ROSELLINI, C.J., FINLEY and WEAVER, JJ., and MACIVER, J. Pro Tem., concur.