Dennis McVICKER et al., Plaintiffs,

v.

INTERNATIONAL UNION OF DISTRICT 50, ALLIED AND TECHNICAL WORKERS OF the UNITED STATES AND CANADA, et al., Defendants.

No. C 71–73.

United States District Court,
N. D. Ohio, W. D.

May 28, 1971.

Green & Lackey, Toledo, Ohio, for plaintiffs.

Hauxhurst, Sharp, Mollison & Gallagher, Cleveland, Ohio, for defendants.

## OPINION

DON J. YOUNG, District Judge.

This cause came to be heard on defendants' motion for an order dissolving the preliminary injunction previously issued by this Court on April 6, 1971, or in the alternative, to modify the aforementioned preliminary injunction to permit defendants to ratify the trusteeship previously imposed upon the local union; upon the plaintiffs' motion for issuance of an order requiring defendants to show cause why they should not be placed in contempt of court; and upon the plaintiffs' motion for a permanent injunction, enjoining defendants from imposing a trusteeship upon them.

The stipulation filed on April 20, 1971, according to which the plaintiffs' motion for a show cause order was withdrawn, make it unnecessary for this Court to decide the validity of that motion.

In the order filed on April 6, 1971, the Court specifically found that the trusteeship imposed by the International Union of District 50, Allied and Technical Workers of the United States and Canada, hereinafter referred to as International, upon its Local 15073, hereinafter referred to as Local, was not in accordance with Title 29, U.S.C. § 401 et seq. or the Constitution of the International Union of District 50. The Court further found that if not enjoined, plaintiffs would suffer irreparable harm and would have no adequate remedy at law. This, coupled with the reasonable probability that the plaintiffs will succeed upon final hearing thereof, led the Court to issue a preliminary injunction enjoining defendants from in any way exercising any power as trustee of Local pending final hearing thereof. Furthermore, defendants were enjoined from attempting to impose a trusteeship upon said Local during the pendency of the action without first:

(a) Providing said Local with specific charges;

(b) Providing said Local an adversary hearing with the right to call and cross-examine witnesses;

(c) Providing said Local with findings of fact with respect to the evidence presented at such hearing; and

(d) Moving this Court for a modification of this order.

It is clearly evident from the record that the first three of these conditions have been satisfied. Thus, the defendants have sought leave of this Court to ratify the trusteeship which was imposed upon Local on January 14, 1971.

Before resolving the ultimate issue—whether the Court's order of April 6th may be modified so as to permit the defendants to ratify the trusteeship previously imposed—it is necessary to first resolve the following issues:

(1) Whether the governing constitution and bylaws permit the establishment of a trusteeship upon the Local; and

(2) Whether the trusteeship was imposed for a valid purpose pursuant to 29 U.S.C. § 462.

### ISSUE 1

 The Constitution adopted by International at its convention in April, 1970, provides in part that:

Charters of Local Unions may be suspended or revoked for cause by the International President, who shall have authority to create a provisional government for the Local Union whose charter has been suspended or revoked.

It is thus evident to the Court that the aforementioned portion of the Constitution gives the International the implied authority to establish and administer trusteeships over its local. *See* 29 U.S.C. § 402(h), which furnishes the definition of trusteeship. In Local Union 13410 United Mine Workers of America v. United Mine Workers of America, 325 F.Supp. 1107 (D.D.C.1971), the District Court for the District of Columbia held

almost identical language in the constitution of the International Union—"Charters of Districts, Sub-Districts and Local Unions may be revoked by the International President, who shall have authority to create a provisional government for the subordinate branch whose charter has been revoked * * *"—to provide the International Union with the authority to impose a trusteeship. In Local No. 2 Int. Bro. of Tel. Workers v. International Bro. of Tel. Workers, 261 F.Supp. 433 (D.Mass.1966), the district court held that the constitutional provision which empowered the president of the international union to "suspend or revoke the charter of any Local Union that refuses to observe law or decisions rendered by proper authority," was in essence, power to take over supervision and operation of the affairs of the local during the vacuum arising from the suspension of the charter which in substance was the power to impose a trusteeship.

### ISSUE 2

According to the statutory mandate of 29 U.S.C. § 462, a trusteeship may be established for any of the following purposes:

(1) Correcting corruption or financial malpractice;

(2) Assuring the performance of collective bargaining agreements or other duties of a bargaining representative;

(3) Restoring democratic procedures; or

(4) Otherwise carrying out the legitimate objects of such labor organization.

 Although the defendants contend that the trusteeship was imposed so as to implement all of the aforementioned purposes, the record of the preliminary injunction hearing is replete with evidence indicating that the sole purpose for imposing the trusteeship upon Local on January 14, 1971, was to prevent it from perfecting its disaffiliation from International and subsequent affiliation

with the International Longshoremen's Association. Accordingly, in ascertaining whether the trusteeship imposed was designed to implement one of the enumerated purposes for establishing a trusteeship, pursuant to 29 U.S.C. § 462, this Court will not consider the purposes of correcting corruption or financial malpractice and restoring democratic procedures, as the record does not support the defendants' contention that the trusteeship was originally imposed to implement those two purposes.

The Court has been unable to find, nor has opposing counsel been able to cite this Court to any decision of any court which holds that it is consistent with the Congressional mandate, as set forth in 29 U.S.C. § 462, for an international union which is the exclusive certified bargaining agent of the local union's employer with reference to the unit of employees which constitutes the local union, to impose a trusteeship upon the local union which attempts to disaffiliate from the international. *Cf.* Crocker v. Weil, 45 LRRM 2937 (1960), where the Oregon circuit court permitted the imposition of a trusteeship where the governing constitution specifically provided for its utilization upon evidence of "dual unionism or an attempt to disaffiliate." Defendants argue that the District Court of the District of Columbia in Local Union 13410 United Mine Workers of America v. United Mine Workers of America, *supra*, held that the imposition of a trusteeship where the local attempts to disaffiliate is a proper purpose, within the meaning of 29 U.S.C. § 462. Defendants have misread the opinion. That issue was never resolved, notwithstanding that the question as to the propriety of a trusteeship for the purpose of preventing disaffiliation was raised. The proper holding of that case is that a trusteeship was properly imposed for a valid purpose, pursuant to Section 302 of the Act, 29 U.S.C. § 462, that is to restore democratic procedures, as fifty-eight members of the local union were unilaterally declared ineligible for membership in

said local union, as they were supervisors or otherwise exempt. Plaintiffs have referred the Court to the case of Sanders v. De Lucia, 266 F.Supp. 852 (S.D.N.Y.), aff'd 379 F.2d 550 (2d Cir. 1967) and contend that it is controlling upon the issue of local union's attempt at disaffiliation. It is the conclusion of the Court that their reliance upon that case is unfounded for three reasons:

(1) There was no provision in the constitution or in the bylaws for the establishment of a trusteeship;

(2) The local unions were the contracting parties with the employers—collective bargaining representatives—and not the international union; and

(3) The international union sought a preliminary injunction which would paralyze the seceding local from disaffiliation, where the international union had been guilty of unclean hands in attempting to impose the trusteeship.

The question concerning the local union's right to disaffiliate was raised in the complaint filed in Olson v. Miller, 105 U.S.App.D.C. 55, 263 F.2d 738 (1959). However, the question was not in a decisional posture at the time the action was before the *Olson* Court, as it was there upon appeal from the granting of a motion to dismiss the complaint on the basis of failure to state a cause of action in that plaintiff had unclean hands, lacked the requisite standing to sue, and had failed to join indispensable parties. The *Olson* Court held that the substantive grounds for dismissal were not well founded and reversed and remanded the case back to the district court for further proceedings not inconsistent with its opinion. Thus, Olson v. Miller, *supra*, is not authority with regard to the issue before this Court.

█ With Congress having enumerated the purposes for which a trusteeship may be imposed, as evidenced in 29 U.S.C. § 462, the legislative history indicates that Congress recognized that "in

some instances trusteeships have been used as a means of consolidating the power of `corrupt union officers, plundering and dissipating the resources of local unions, and preventing the growth of competing political elements within the organization." 2 U.S.Code Cong. & Ad.News, 1959, p. 2333. In order to preserve the legitimate use of trusteeships, in enacting 29 U.S.C. § 462, Congress selected language of a broad and general nature in enumerating the purposes · for which a trusteeship may be utilized. However, being cognizant of the desire to prevent their misuse, Congress intended to limit those purposes. In determining whether a particular case meets the test, the statute should be construed in light of the various other provisions of the Labor-Management Reporting and Disclosure Act, as well as the underlying purposes behind its enactment. United Bro. of Carpenters & Joiners of America v. Brown, 343 F.2d 872 (10th Cir. 1965).

Section 401 of the Act contains the various purposes underlying its enactment. Congress found it to be in the public interest:

> to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection; that the relations between employers and labor organizations and the millions of workers they represent have a substantial impact on the commerce of the Nation; and that in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations. 29 U.S.C. § 401.

With the aforementioned purposes in mind, it is necessary to examine the facts in order to determine whether the imposition of the trusteeship to arrest the attempt at disaffiliation would in fact be consistent or conflict with the purposes of the Labor-Management Reporting and Disclosure Act.

■ The evidence before the Court clearly indicates that International is the certified bargaining agent of the Toledo Overseas Terminal Company, hereinafter referred to as Employer, and as such is the "exclusive representative[s] of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159. Thus, International is the duly elected representative of Local for collective bargaining purposes. Presently, Employer and International are parties to a contract consummated in 1969 which is to extend for a term of three years terminating on April 15, 1972. The ultimate relief which Local prays for is a permanent injunction, enjoining International from imposing the trusteeship, and a modification of the preliminary injunction entered on April 6, 1971, permitting the plaintiffs to affiliate with the International Longshoremen's Association. For all intents and purposes, Local asks that this Court enjoin International from acting as the exclusive certified bargaining agent of the Local. After Local affiliates with the International Longshoremen's Association, one or both would act as the bargaining agent of Employer's employees who are members of Local. Plaintiffs contend that the "performance of the collective bargaining agreement or other duties of a bargaining representative" would not be impaired because Local would adhere to all contractual obligations and would safeguard all the contractual rights enuring to the benefit of the employees who comprise the unit for which International is the present certified bargaining agent. It is the conclusion of the Court that "other duties of [the] bargaining representative" would be impaired.

Notwithstanding the fact which the plaintiffs ask this Court to assume that the International Longshoremen's Association would adhere to the terms of the

contract, this Court finds that the duties of International as the bargaining representative would be impaired. The International would no longer be a party to the collective bargaining agreement despite its certification by the Board on a contract that would not expire until April 15, 1972.

In Brooks v. National Labor Relations Board, 348 U.S. 96, 75 S.Ct. 176, 99 L. Ed. 125 (1954), the Supreme Court resolved the issue as to "[what] is the duty of an employer toward a duly certified bargaining agent if, shortly after the election which resulted in the certification, the union has lost, without the employer's fault, a majority of the employees from its membership." The Supreme Court held that if the certification is based upon a National Labor Relations Board election, it must be honored for a "reasonable" period, ordinarily "one year." The articulated reason for that holding was the recognition that in political and business circles, the choice of voters in an election binds them for a fixed period of time, the policy being to promote a sense of responsibility in the electorate and the needed coherence in administration. The Supreme Court was cognizant of the practice of competing unions to conduct raids and desired to minimize the strife by removing the hazards of conducting short-terms elections, and therefore foster the legitimate objects of labor organizations.

■ Title 29 U.S.C. Section 159 provides for the proper procedure in which an individual or labor organization can assert that the labor organization which is currently recognized as the certified bargaining representative is in fact no longer a representative as defined in 29 U.S.C. § 159(a). Upon the filing of that petition, the Board shall conduct an investigation and if it has reasonable cause to believe that a question of representation affecting commerce is raised, it shall hold a hearing after furnishing due notice. If upon the record at the hearing the Board ascertains that such question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof. 29 U. S.C. § 159(c) (1). From the aforementioned, it can be concluded that Congress intended to defer to the expertise of the Board, with regard to the granting of amended certifications. Therefore, prior to Local's members being entitled to a new bargaining representative, Local or the International Longshoremen's Association must turn to the Board and petition for amended certification. Only upon the Board's actual granting of amended certification will the removal of International as the exclusive certified bargaining agent on a contract which terminates on April 15, 1972 not amount to an interference with the duties of a bargaining representative. *See* National Labor Relations Bd. v. Sanson Hosiery Mills, 195 F.2d 350 (5th Cir. 1952). The existing certification must be honored until lawfully rescinded. N. L.R.B. v. Mexia Textile Mills, Inc., 339 U.S. 563, 70 S.Ct. 833, 94 L.Ed. 1067 (1950); National Labor Relations Bd. v. Sanson Hosiery Mills, *supra*.

■ Plaintiffs contend that the imposition of a trusteeship to prevent disaffiliation would frustrate the national labor policy in that it would conflict with the recognition that workers have the "full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 51 Stat. 136. This Court does not join in their conclusion. There are other national labor policy considerations besides full "freedom of association" and "designation of representatives of their own choosing," underlying the enactment of the National Labor-Management Relations Act. Congress, cognizant of the substantial impact the relations between employers and labor organizations and the millions of workers which they represent have on the commerce of the nation, has stated that it is the responsibility of the Federal Government to protect the "employees' rights to organize, choose their

own representatives, [and] bargain collectively," in the public interest. 29 U.S.C. § 401(a). Accordingly, Congress created the National Labor Relations Board with the goal that the Board would develop expertise in this substantive area and afforded it rule-making power to execute the underlying purposes of the National Labor-Management Relations Act. One of those underlying purposes of the Act was the promotion of industrial stability. Congress recognized that ultimately the workers, via their freedom of association, have the right to designate who their representatives shall be. 29 U.S.C. § 159. However, so as to reduce the degree and number of disruptive effects upon commerce, and thus to foster industrial stability, and in turn, minimize the degree of strife caused by competing unions conducting raids, as well as the traditional intra-union battles, pursuant to 29 U.S.C. § 159, Congress gave the Board power to determine, after a proper investigation, who is the duly elected representative bargaining agent of an appropriate unit. If, within the expertise of the Board, it is determined that it direct an election by secret ballot, such will be ordered, and the Board will certify the results thereof. Such is the situation in the case at bar. Thus, pursuant to that duly held secret ballot election, the Board ascertained that International is the exclusive certified bargaining agent of the unit of employees in question. Accordingly, plaintiffs' rights to freely associate with whomever they desire and rights to designate representatives of their own choosing has not been contravened. Rather, their choice, which is International, will remain their exclusive bargaining agent until Local petitions the Board for an amended certification pursuant to 29 C.F.R. § 201.10 et seq. This result is what the plaintiffs have continuously failed to recognize, notwithstanding that they recognize that the Board has been afforded power to determine who should be the exclusive representative of the employees in an appropriate unit, and that

it is within its exclusive, primary competence to make these determinations. San Diego Building Trades Council v. Garmon, 353 U.S. 26, 77 S.Ct. 607, 1 L. Ed.2d 618 (1967). The two cases which the plaintiffs cite in support of their contention—American Bridge Division, United States Steel Corp., 185 N.L.R.B. No. 98, 75 LRRM 1203 (1970); North Electric Company, 165 N.L.R.B. No. 88, 65 LRRM 1379 (1967)—primarily deal with petitions for amended certification filed with the Board and do not support their contention. Rather, these decisions support the conclusion of this Court; the proper procedure for plaintiffs to pursue is to inform the Board of the alteration of the employees' views with regard to its representative. It is apparent to the Court why the plaintiffs elected not to follow that course—the contract bar doctrine, according to which the Board will not conduct a representation election until near the expiration of the collective bargaining agreement, but in no instance will the bar apply for more than three years. McLeod v. Local 476, United Broth. of Indus. Wkrs., 288 F.2d 198 (2d Cir. 1961); General Cable Corporation, 139 N.L.R.B. No. 111 (November 19, 1962). In commenting on extension from two or three years, the Board stated that it was aware that as a result of the extension there would be a further delay as far as the time when specific groups of employees desiring an election will be afforded the opportunity to exercise their right under the Act freely to choose bargaining representatives. The Board specifically ruled out the possibility of expanding the bar period to a period in excess of three years, as the stability of industrial relations would be too heavily weighted against the employees' freedom of choice, and thus create an inequitable imbalance. As far as the extension from two years to three, the Board concluded that the added delay is relatively minor and fully warranted, when viewed in light of the countervailing considerations—"a greater measure of stability of labor relations into our industrial com-

munities as a whole to help stabilize in turn our present American economy." General Cable Corp., *supra*.

At least by implication, plaintiffs seek to analogize their position and rights under Subchapter 4 of the Labor-Management Reporting and Disclosure Act with that of employees engaged in an organizational campaign under the Labor-Management Relations Act. Reliance upon this analogy is misplaced. Once an employee exercises his right of association and forms a union, he then has relinquished his own individual rights, which now become subservient to the rights of the group. The group or local union in turn, as the agent for the employee, then makes promises not only to the employer but also to the International Union in exchange for which, of course, certain benefits flow.

As stated previously, this country's labor policy demands industrial stability. Such stability may be disturbed in several fashions: the most obvious being strikes; another, less obvious, being union raids. Federal courts will issue injunctions enjoining strikes in the face of a no-strike clause contained in a collective bargaining agreement. Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). *A fortiori*, federal courts should not enjoin the imposition of a valid trusteeship to prevent an attempt at disaffiliation where the agreement between the International and the Local makes provision for such measure.

In light of the Court's resolving of the two issues previously referred to, in the affirmative, the order of this Court entered on April 6th, will be modified, so as to permit the defendants to ratify the trusteeship previously imposed. Upon International's ratification of the trusteeship, the preliminary injunction issued by this Court will be dissolved.