**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff,**

v.

**LOCAL LODGE D474 OF the CEMENT, LIME, GYPSUM AND ALLIED WORKERS DIVISION OF the INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, et al., Defendants.**

No. SA–86–CA–1568.

United States District Court,
W.D. Texas,
San Antonio Division.

March 11, 1987.

Frank Herrera, Jr., San Antonio, Tex., Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, Kan., for plaintiff.

John E. Schulman, Law Office of John Schulman, P.C., San Antonio, Tex., for defendants.

## ORDER

H.F. GARCIA, District Judge.

On this day came on to be considered the motion of plaintiff for preliminary injunction. Also under consideration are the Findings and Recommendation of United States Magistrate Robert B. O'Connor to whom the motion was referred. Plaintiff, the International Brotherhood of Boilermakers (International), has sued one of its local lodges (D474) and three of the lodge officers. Pursuant to the constitution of the International, it imposed a trusteeship on D474 and sought possession of the funds, properties, books and assets of D474, which defendants have refused to relinquish. The International seeks to enjoin defendants from transferring or otherwise disposing of them. After conducting a two day evidentiary hearing, the Magistrate recommended that the motion be granted. Defendants have timely filed objections to the report. Pursuant to Title 28 U.S.C. Section 636(b), this Court has conducted a de novo review of the report by reading the pleadings, the transcript of the hearing, and the evidence.

Title 29 U.S.C. Section 462 provides that:

"Trusteeships shall be established by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or oth-

erwise carrying out the legitimate objects of such labor organization."

Three essential conditions must be met for a trusteeship to be valid: (1) there must be adherence to the constitution of the union, (2) there must be a fair hearing, and (3) it can be imposed only for a permissible purpose. *Luggage Workers Union, Local 167 v. International Leather Goods, Plastics and Novelty Workers Union*, 316 F.Supp. 500, 504 (D.Del.1970). *See, Executive Board Local 1302 v. United Brotherhood of Carpenters and Joiners of America*, 477 F.2d 612, 613 (2d Cir.1973). *Graphic Arts International Union, AFL–CIO v. Graphic Arts International Union, Local No. 529*, 529 F.Supp. 587, 593 (W.D.Mo. 1982). A trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing shall be presumed valid and shall not be subject to attack for a period of eighteen months except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462. Title 29 U.S.C. Section 464(c).

Article XVIII of the International's constitution governs trusteeships. Section 3 provides for the imposition of a trusteeship if the activities of the local or its officers or members create an emergency imminently threatening the welfare, funds or property of the local. In such case, a hearing must be held within fifteen days. Section 1 establishes several grounds for imposition of a trusteeship: secession or threatened secession, dissolution or threatened dissolution, dissipation or loss of funds or assets or financial malpractice or corruption or threat thereof, violation or threatened violation of collective bargaining agreements, and the deprivation of democratic procedures and other activities constituting a violation of the constitution and threatening the welfare of the subordinate body membership or the International Brotherhood. Section 2 provides that the trustee shall have the right to all the funds, properties, books and assets of the local. It also confers on the trustee the authority to remove or suspend officers, and it requires those officers to surrender to the trustee all monies, books and properties of the local.

The evidence is undisputed that as early as September, 1986, D474 initiated efforts to disaffiliate from the International. Defendants have also admitted transferring funds of the local that month and refusing to relinquish them to the trustee. The evidence establishes that D474 and other similarly situated locals met on September 17, 1986 and discussed disaffiliation from the International as well as the transfer of funds. Additionally, at that meeting, they voted in favor of formation of the IWNA and appointed trustees which included a D474 member. The testimony of Victor Maggio, assistant to the president of the International, at the Magistrate's hearing succinctly sets forth the reasons the trusteeship was imposed.

Q: Can you give the Court, generally, the topics or the reason that the Lodge D–474 transcript played a role in the determination as to whether or not to impose a trusteeship.

A: Yes. One, that officers and representatives of Lodge D–474 participated in a meeting September 17th, 1986 in Ontario, California for the purpose of formulating another organization called the Independent Workers of North America. Secondly, that a trustee was appointed by the Lodge president to serve on behalf of Lodge D–474 to manage the affairs of the Independent Workers of North America where there is no provision within the Lodge bylaws, nor constitution for any such action. Thirdly, that a result of their own testimony confirmed what we believe to be of fundamental conflict of the officers and members of Lodge D–474 with regard to protection of the assets of the Local Lodge, and to preserve the collective bargaining duties required under the agreement. (P. 190)

A: Consequently, as a result of all testimony provided during NLRB hearings, there was reason to believe there was immanent danger in Lodge D–474 as to the welfare of the assets, fund, property

of the Local Lodge. That in fact, there was dissolution or threatened dissolution, secession or threatened secession. Further violation by officers of Lodge D–474 as to their duties and responsibilities under the constitution. And further as a result of their involvement with the IWNA there was a fundamental conflict which jeopardized the collective bargaining relationship with the employer. Further, those reasons existed and caused the need for the emergency. Further, by telegram of November 17th, the Lodge officers were advised that they failed to comply with directives to turn over all records, books, and assets of the Local Lodge to the trustee, which is expressly provided for in article 18 of the constitution. Further, there was failure to pay per capita tax and submit membership reports in a timely fashion as required under the constitution, whereby officers neglected their duties and responsibilities. And in fact, neglected their fiduciary responsibility to the members of Lodge D–474 by jeopardizing their good standing in the International Brotherhood of Boilermakers for failing to submit payments and reports.

(P. 193–194)

The trusteeship was imposed on November 7, 1986 and a hearing was held on November 21st. The attempt to disaffiliate and the transfer of funds justified imposition of the emergency trusteeship under the constitution. The hearing was timely held. This Court is convinced that the International complied with the requirements of its constitution in imposing the trusteeship on D474.

█ The next condition which must be satisfied is the requirement of a fair hearing. A fair hearing implies at least the procedural requirements of notice of the charges and the date and nature of the hearing, presentation of evidence and witnesses in support of the reasons for imposing the trusteeship with the opportunity for cross-examination, and the opportunity to present evidence in rebuttal. *Jolly v. Gorman*, 428 F.2d 960, 967–968 (5th Cir.1970). *C.A.P.E. Local Union 1983 v. International Brotherhood of Painters and Allied Trades*, 598 F.Supp. 1056, 1070 (D.N.J. 1984). *Tam v. Rutledge*, 475 F.Supp. 559, 569 (D.Hawaii 1979). *Luggage Workers Union, Local 167*, 316 F.Supp. at 508. The hearing need not precede imposition of the trusteeship. *Hotel and Restaurant Employees and Bartenders International Union v. Rollison*, 615 F.2d 788, 792 (9th Cir.1980). However, for post hac ratification to be valid, it must be permissible under the union's constitution and follow the imposition with reasonable promptness. *National Association of Letter Carriers v. Sombrotto*, 449 F.2d 915, 920 (2d Cir.1971). *C.A.P.E. Local Union 1983*, 598 F.Supp. at 1068. *Tam v. Rutledge*, 475 F.Supp. at 562.

█ As noted above, the International constitution does contain a ratification provision, justifying the post-imposition hearing. On the same day the trusteeship was imposed, an official notice of the trusteeship hearing was issued. The notice advised that a hearing would be held on November 21st to determine whether to continue the trusteeship. Officers and members were advised they would have the opportunity to present evidence and cross-examine witnesses at the hearing. The reasons for the emergency trusteeship were also cited in the notice. A subsequent notice on November 17th further advised D474 officers that they had violated the constitution by refusing to relinquish all monies, books and properties of the local to the trustee. It also cited their failure to collect and remit payment of per capital tax to the International, as well as the conflict which existed because of their ties to the IWNA. The officers of D474 received these notices. Only one member of D474 attended the trusteeship hearing and, though given the opportunity, did not cross-examine any witnesses. None of the officers appeared at the hearing.

The Court finds that all of the elements of a fair hearing were satisfied. The notice was sufficient to advise defendants and D474 members of the purpose of the hearing, and they were given the opportunity to present evidence and to question witnesses. The local's officers acted at their own peril

in not attending or challenging the hearing and waived any possible objection to the sufficiency of the hearing. *C.A.P.E. Local Union 1983*, 598 F.Supp. at 1071.

■ The final and most contested condition of trusteeship validity concerns the purpose for its imposition. Under section 462, permissible purposes to impose a trusteeship are to correct corruption or financial malpractice, to assure the performance of collective bargaining agreements or other duties of a bargaining representative, to restore democratic procedures or to otherwise carry out the legitimate objects of the labor organization. Defendants contend that the International imposed the trusteeship for the sole and allegedly improper purpose of preventing disaffiliation. As appears above, the reasons cited by International for its actions are several. If any one of its motives is permissible, then the trusteeship is valid. *C.A.P.E. Local Union 1983*, 598 F.Supp. at 1075. *International Brotherhood of Electrical Workers, Local 1186 v. Eli*, 307 F.Supp. 495, 506 (D.Hawaii 1969). It should also be noted that the presumption of validity, established by section 464(c), now applies.

■ Several courts have held that the prevention of a local's disaffiliation is not a proper purpose under section 462 for imposition of a trusteeship. *Local Union 13410, United Mine Workers v. United Mine Workers*, 475 F.2d 906 (D.C.Cir.1973). *United Brotherhood of Carpenters and Joiners of America v. Brown*, 343 F.2d 872, 883 (10th Cir.1965). *Tile, Marble, Terrazzo, Finishers, Shop Workers, Granite Cutters International Union, AFL–CIO v. Granite Cutters and Marble Setters, Local 106*, 621 F.Supp. 1188, 1192–1193 (E.D.N.Y.1985). Union self-preservation, standing naked and alone, is not sufficient to justify a trusteeship. *Benda v. Grand Lodge of the International Association of Machinists and Aerospace Workers*, 584 F.2d 308, 317 (9th Cir.1978).

■ Other courts have held that disaffiliation does justify a trusteeship since disaffiliation would have a detrimental effect on the collective bargaining process. *Executive Board Local 1302*, 477 F.2d at 614.

*McVicker v. International Union of District 50*, 327 F.Supp. 296 (N.D.Ohio 1971). Defendants contend that the trusteeship in this case infringes on their rights, under Title 29 U.S.C. Section 411, to freedom of speech and assembly and to choose their own representative. Section 411(a)(2) provides, however, that nothing in the bill of rights shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations. The adoption and enforcement of a resolution against disaffiliation does not violate the freedom of speech and assembly provisions of the labor bill of rights since it is a reasonable rule relating to the responsibility of every member to the organization as an institution. *National Education Association v. Dade County Classroom Teachers Association, Inc.*, 407 F.Supp. 739 (S.D.Fla.1974), *affirmed*, 527 F.2d 1388 (5th Cir.1976). *McVicker*, 327 F.Supp. at 301. *Sawyers v. Grand Lodge, International Association of Machinists*, 279 F.Supp. 747, 755–756 (E.D.Mo.1967). Defendants also state that the lack of an existing collective bargaining agreement precludes justification of the trusteeship. However, even in the absence of a contract, a trusteeship can be imposed to prevent the destruction of the existing bargaining unit and to preserve the status of the certified bargaining representative. *Executive Board Local 1302*, 477 F.2d at 615. Since the International is the bargaining representative, the same rationale applies here.

■ Although defendants had attempted to disaffiliate prior to imposition of the trusteeship, the effort was ineffective. An affiliation process to be adequate must provide members with an adequate opportunity for reflection and for the presentation of opposing viewpoints. *C.A.P.E. Local Union 1983*, 598 F.Supp. at 1074. D474 met to vote on the disaffiliation issue on October 21, 1986. Notice of this meeting had been posted only two days before, and the International representative was

not notified until the day of the meeting. Only approximately one-third of the local members attended. This procedure was not adequate. Until the appropriate NLRB procedures are followed to remove the International as the exclusive certified bargaining representative, the existing certification must be honored. *McVicker*, 327 F.Supp. at 301.

In any event, whether D474 had disaffiliated itself or not is irrelevant. It is clear from the evidence that the trusteeship was not imposed solely because of the secession efforts. Defendants freely admitted transferring and secreting the assets of D474. In *C.A.P.E. Local Union 1983*, the district court stated that while it did not believe that disaffiliation, in and of itself, was a sufficient ground for a continuing trusteeship, it did believe that the threat of imminent disaffiliation, when combined with other possible problems with the local, does suffice to impose a temporary trusteeship. 598 F.Supp. at 1069–1072. In *Graphic Arts International Union, AFL–CIO*, the union sued one of its locals as well as its president and secretary-treasurer, to enjoin them from interfering with the imposition of a trusteeship and from disaffiliating with the international and to have an accounting of the local's assets. When the local became dissatisfied with the union, it discussed disaffiliation and agreed to secrete union funds by transferring them to a new account. Defendants were charged with financial malpractice in disbursing the funds among the members of the local as part of the disaffiliation campaign. The court observed that while there had been no allegation that the assets had been diverted for the personal use of the officers or against the wishes of the membership, "financial malpractice" could include the effect of the actions of the officers and members even though taken in good faith. The records and assets which the local was to pass on to the international still belonged to the local as an organization. The court further found that no local officers remained loyal to the local as an entity and could not properly administer the funds. The court found that the trusteeship was valid, restrained defendants from interfer-

ing with it, and held that the trustee was entitled to take over and hold all books, records, papers and assets of the local.

The situation in the case at bar is almost identical. Defendants are guilty of financial malpractice in hiding D474 assets. They have interfered with the collective bargaining process by attempting to disaffiliate. They have violated provisions of the International constitution, to which they agreed to be bound. Such actions frustrate legitimate objects of the International. All of these actions are permissible purposes for the imposition of a trusteeship under section 462. This Court finds that the trusteeship was imposed in good faith and is valid.

What appears to the Court to be the underlying and central issue in this case is not disaffiliation but forfeiture of the assets. Article V, Section 6 of the constitution provides that if any local lodge has less than ten active members, its charter shall be revoked and all books, records, properties, funds and assets owned or held by the lodge shall become the property of the International. While the International cannot and does not attempt to prevent disaffiliation by D474 members, it can and does seek, under this provision, to obtain the local's assets. Defendants have cited no cases declaring such a forfeiture provision invalid. In *Bowman v. Moe*, 66 Wash. 2d 629, 404 P.2d 437 (1965), the Supreme Court of Washington rejected the argument that such provisions violated public policy. *Also see, Phillips v. Perrin*, 253 Or. 540, 450 P.2d 767 (1969). *Bradley v. O'Hare*, 11 A.D.2d 15, 202 N.Y.S.2d 141 (1960). *But see, International Brotherhood of Pulp, Sulphite and Paper Mill Workers v. Delaney*, 73 Wash.2d 956, 442 P.2d 250 (1968). In *Local No. 1 (ACA) v. International Brotherhood of Teamsters*, 461 F.Supp. 961 (E.D.Pa.1978), *affirmed in part and reversed in part*, 614 F.2d 846 (3rd Cir.1980), the district court, without discussing the validity of a similar forfeiture provision, forfeited the local's assets to the union upon revocation of the local's charter. *See, Michigan Teamsters Joint Council v. Bufalino*, 626 F.Supp. 51 (E.D.

Mich.1985). In *International Brotherhood of Teamsters v. United States*, 275 F.2d 610 (4th Cir.1960), the court, again without discussing the validity of forfeiture, discussed the constitution provisions for forfeiture of funds and property in holding that the local was not an autonomous body, but was a subdivision of the union, subject to the union's control. This issue need not be decided at this point. These cases provide sufficient authority for finding plaintiff's likelihood of success on the merits.

The Court agrees with the Magistrate that the preliminary injunction should be granted. The trusteeship does not prevent the members of D474 from disaffiliating and choosing a new bargaining representative. While it may cause injury to them, by way of the forfeiture of assets, this and the trusteeship provisions are part of the contract which defendants agreed to in March, 1984 (when the Cement, Lime, Gypsum and Allied Worker's International Union merged with the International Brotherhood of Boilermakers), at an International convention in August, 1986, and in their bylaws. *See, National Association of Letter Carriers*, 449 F.2d at 923. The preliminary injunction does not resolve the ultimate disposition of the assets and does not determine the validity of the forfeiture provision. Plaintiff has, however, shown a likelihood of success on the merits, and irreparable harm if defendants retain, and perhaps dissipate, assets which contractually may be forfeited to the International. The harm to plaintiff if the preliminary injunction is not granted outweighs the harm to defendants if it is. As noted above, defendants agreed to all of the provisions they now contest. Section 2 of Article XVIII of the constitution requires the trustee to hold the local's properties in trust for the benefit of the local and to expend them only to the extent necessary for the proper conduct of the local's affairs. The preliminary injunction will give the trustee no authority greater than that conferred in the constitution to administer the trusteeship. It will not disserve the public interest.

It is, therefore, ORDERED that defendants and all members of D474 are restrained from interfering with the trusteeship. Defendants are ORDERED to relinquish to the trustee, within ten days, all funds, properties, books and assets of D474. The trusteeship shall be administered by the trustee in accordance with the International constitution.

It is further ORDERED that defendants' motions to dismiss, to recommit to the Magistrate, and for an oral hearing are DENIED. Defendants' motion to supplement its exceptions is GRANTED.