INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Plaintiff,

v.

LOCAL LODGE D405 et al., Defendants.

Civ. No. 87–24 PCT EHC.

United States District Court, D. Arizona.

April 25, 1988.

Michael J. Keenan, Ward & Keenan, Ltd., Phoenix, Ariz., Michael J. Stapp, Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, Kan., for plaintiff.

Guy David Knoller, Guy David Knoller, P.C., Phoenix, Ariz., Walter U. Weber, Tucson, Ariz., Lynne P. Fox, Robert G. Rothstein, Bernard N. Katz, Michael N. Katz, Meranze and Katz, Philadelphia, Pa., for defendants.

First Interstate Bank of Arizona, N.A., Phoenix, Ariz., pro se.

## ORDER

CARROLL, District Judge.

Plaintiffs' International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers (IBB or International) filed a motion for summary judgment requesting the Court to declare the trusteeship imposed on defendants as valid and to require the defendants to surrender their assets to the International.

More specifically plaintiffs argue that the officers of the Local should be required to meet their obligations under the International's Constitution by making per capita payments to the International. The Local began making per capita payments to the Independent Workers of North America (IWNA) after October of 1986. As the Local was not meeting its Constitutional obligations, the International imposed a trusteeship on the Local which they claim was procedurally valid and imposed for permissible reasons and should be upheld.

Defendants argue that the motion for summary judgment should be denied as fact issues remain regarding whether the Constitution of the International applies in light of the disaffiliation and Merger with the IWNA and regarding when the International ceased being the collective bargaining representative for the defendants. Plaintiffs claim that their obligation did not cease until January 15, 1987, after the NLRB certified the IWNA as the bargaining unit for defendants. Defendants claim that the obligation ceased in October of 1986 when the Local voted to disaffiliate.

### Background

The International Brotherhood of Boilermakers merged with the Cement, Lime, Gypsum and Allied Workers on April 1, 1984. In August of 1986 the International held a convention at which the Cement Workers Division was to elect a vice president. The problems began when there was a disagreement as to who would be eligible to vote for this vice presidency. Defendants claim the understanding was that only the Cement Workers would vote for their vice president. Plaintiffs argue that the vice president was to be elected at large by a vote of the entire membership. Defendants claim that the International violated the Merger Agreement by allowing all delegates to vote on the vice president.

Shortly after the convention, in September of 1986 several disgruntled Locals met with representatives of the IWNA to discuss becoming affiliated with that organization. Members of Local D405 were among those who attended that meeting. At the meeting with the IWNA, those in attendance were told to make their funds inaccessible to anyone not concerned with the Local. Deposition of Robert Mochizuki, p. 117, Exhibit C to plaintiffs appendix in support of motion. Defendants construed this to mean that the funds were to be made inaccessible to the International. Mochizuki Depo., p. 117. Defendants admit to transferring money to new accounts of the IWNA because they believed that the International had violated its Constitution. Specifically, defendants claim that the International violated Art. 1, Sec. 2, of the Constitution which states "[T]his organization is founded on a principle that in a

democracy, good unionism is good citizenship ... to implement the exercise of the natural right of workers to organize that they may more securely work with dignity; to establish the contentment of freedom and security; to enable its members to participate actively in self-government ..."

After the meeting with the IWNA, Local D405 members held a meeting and voted to disaffiliate from the International. This meeting was held on October 16, 1986. Floyd Phillips, the International representative was informally notified of the meeting a couple of days before it occurred. Mochizuki Depo., p. 145. No representative of the International attended the meeting. Mochizuki Depo., p. 147. Fifty-four of the 120 members of Local D405 attended the disaffiliation meeting and voted to disaffiliate. Mochizuki Depo., p. 145.

Defendants had not paid per capita tax to the International since July of 1986. Defendants admit that they owe per capita taxes for July, August, and September of 1986. Mochizuki Depo., p. 161-62. Defendants deny, however, that they owe per capita taxes for the months of October through December because they were no longer affiliated with the International. Mochizuki Depo., p. 161-62.

Many of the transfers of funds to the IWNA were not reported to the International. Martinez Depo., pps. 70-84. Checks for per capita taxes after October 1986 were paid to the IWNA. Martinez Depo., pps. 94-100. Defendants state that the total per capita taxes that would have been owed to the International from July through December of 1986 totals $14,855.19. Martinez Depo., p. 116.

The International imposed a trusteeship on Local D405 on November 21, 1986. The Local was notified on November 21, 1986 of the imposition of the trusteeship and of the date of the hearing to consider the continuation of the trusteeship, which hearing was held on December 5, 1986. The following reasons were given for the imposition of the trusteeship:

(1) promoting secession, dissolution and/or disaffiliation as a result of actions of certain members and/or officers of Lodge D405,

(2) failure by certain officers of Lodge D405 to perform the duties and/or responsibilities in accordance with the International Brotherhood Constitution and approved By-laws of the Lodge,

(3) possible financial malpractice, including but not limited to, misappropriation, dissipation and improper use and/or handling of funds and assets of Local Lodge D405 without authorization in violation of the International Brotherhood Constitution, Local By-Laws and 29 U.S.C. section 501(a)-(c),

(4) a fundamental conflict existed due to apparent ties with the Independent Workers of North America posing serious questions of the ability to carry out the duties of the recognized bargaining representatives,

(5) the failure to pay per capita tax and submit various reports as required under the International Brotherhood Constitution.

Some officers and members of the Local have admitted to engaging in the conduct described in 1, 2, and 5 above. Mochizuki Depo., p. 177; Deposition of John Martinez, p. 61, Exhibit D to plaintiffs' appendix in support of motion. Mochizuki also admitted to the conduct described in # 3 above. Mochizuki Depo., p. 177. However, the defendants argue that the trusteeship was imposed solely for the purpose of preventing disaffiliation by the Local.

The meeting to consider the continuation of the trusteeship was held on December 5, 1986. No members or officers of Local D405 were present. Defendants have no reason to believe that the International did not follow the proper procedure in imposing the trusteeship. Mochizuki Depo., p. 176. The trusteeship was affirmed by the International at the December 5, 1986 meeting.

On January 15, 1987 the NLRB certified the IWNA as the collective bargaining representative of Local D405.

The primary provisions of the International Constitution at issue here are Article

XVIII, sections 1 and 2, and Article V, section 6.

Article XVIII, section 1, provides for the imposition of a trusteeship and allows a Local to be summarily placed under a trusteeship when grounds exist, subject to a subsequent hearing. The hearing shall be within 15 days after the imposition of the trusteeship. The Local shall be given at least 10 days written notice of the trusteeship hearing. Interested officers and members may appear to present evidence as to why a trusteeship should or should not be imposed. Grounds for the imposition of the trusteeship shall be stated in the notice.

Article XVIII, section 2, provides for the administration of a trusteeship and states that the trustee shall have the right, upon demand, to all funds, properties, books and assets of the Local. Such property to be held in trust for the Local. During the period of the trusteeship, no funds of the Local, except the normal per capita tax and other financial obligations normally payable by the Local, shall be transferred to the International unless the Local is dissolved. If it becomes necessary to revoke permanently the charter of the Local, then any balance remaining to the credit of the Local and other property shall be forwarded to the International.

Article V, section 6, provides that the Local shall continue in existence while 10 or more of its members are employed under the jurisdiction of the International. If 10 or more members maintain membership then all books, records, property, funds and assets shall remain the property of the Local as long as the charter is maintained. However, any Local having less than 10 members shall be automatically disbanded and its charter returned to the International together with all books, records, properties, funds and assets owned or held by the Local at the time of the disbanding and shall become the property of the International.

Defendants argue that the Merger Agreement superseded the Constitution until 1991 and that agreement provided that the Local would retain its Local treasury. Merger Agreement, Article V section 3.

Defendants agree that at least until October of 1986 they were bound by the Constitution of the International. Mochizuki Depo., p. 120; Martinez Depo., p. 26; Affidavit of Richard Northrip submitted as supplemental authority to defendants' opposition to the motion, p. 8.

*Discussion*

The questions to be considered by the Court include (1) whether the plaintiffs complied with the proper procedures for imposing a trusteeship, (2) whether the defendants were given a fair hearing regarding the continuation of the trusteeship, (3) whether the reasons for imposing the trusteeship were valid and (4) whether the Merger Agreement supercedes the Constitution.

Title 29 United States Code section 464(c) provides that "[I]n any proceeding pursuant to this section a trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing ... shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title ..."

Title 29 United States Code section 462 provides that "[T]rusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization."

Former local unions of the International Brotherhood of Boilermakers have been the subject of litigation in other districts. *International Brotherhood of Boilermakers*

*v. Local Lodge D474,* 673 F.Supp. 199 (W.D.Tex.1987); *International Brotherhood of Boilermakers v. Local Lodge D 461,* 663 F.Supp. 1031 (M.D.Ga.1987); *International Brotherhood of Boilermakers v. Local Lodge 714,* 663 F.Supp. 1071 (N.D. Ill.1987).

In *IBB v. Local Lodge D474,* the Local initiated efforts to disaffiliate and become part of the IWNA in September of 1986. In pursuing these efforts, the Local transferred funds to the IWNA. The Local admitted to transferring funds and refusing to relinquish them to the trustee of the International. The International imposed a trusteeship on November 7, 1986 and held a hearing on November 21, 1986. The Court noted that the Constitution of the International provided for the imposition and administration of a trusteeship with certain time limits for the notice and hearing. The Constitution also provided grounds for the imposition of trusteeships. Among these were the attempt to disaffiliate and financial malpractice. The Constitution also contains a ratification provision justifying the post-imposition hearing. The court found that the attempt to disaffiliate and the transfer of funds justified the imposition of a trusteeship and that the International complied with the requirements for the imposition of a trusteeship.

The Court next considered whether the Local was afforded a fair hearing. The Local received notice of the charges and the date and nature of the hearing on the same day that the trusteeship was imposed. The Local was given the opportunity to attend the hearing and cross examine those witnesses supporting the imposition of the trusteeship as well as present evidence on their behalf in opposition to the imposition of the trusteeship. Local officers acted at their own peril by not attending the hearing. *Local D474,* 673 F.Supp. at 202.

Finally the court considered whether the trusteeship was imposed for a permissible purpose. Title 29 United States Code section 462 and the International Constitution list the reasons for which a trusteeship may be imposed. The court stated that if any reason for the imposition of the trust-

eeship is permissible then the trusteeship is valid. *Local D474,* 673 F.Supp. at 203.

Local D474 alleged that the International imposed the trusteeship for the sole purpose of preventing disaffiliation and that this was an improper purpose. The Local met to vote on disaffiliation on October 21, 1986. Notice of this meeting was posted only two days prior and the International representative was not notified until the day of the meeting. Only approximately one-third of the Local members attended the meeting. While union self preservation alone is insufficient to justify the imposition of a trusteeship, *Local D474,* 673 F.Supp. at 203, *citing Benda v. Grand Lodge,* 584 F.2d 308, 317 (9th Cir.1978), the court found other permissible reasons for the imposition of trusteeship.

The International imposed the trusteeship on Local D474 for reasons other than the secession efforts. Local Lodge D474 admitted to transferring and secreting assets. The court found that in hiding assets Local D474 was guilty of financial malpractice; that in attempting to disaffiliate the Local interfered with the collective bargaining process and, thus, the Local violated provisions of the International Constitution by which they agreed to be bound.

The International Constitution also provides for the forfeiture of assets if the local has less than ten members. While the International could not attempt to prevent disaffiliation by Local D474, it could seek to obtain the Local's assets. *Local D474,* 673 F.Supp. at 204. Until the appropriate NLRB procedures were followed to remove the International as the exclusive bargaining representative for the Local, the existing certification must be honored. *Local D474,* 673 F.Supp. at 203.

The Court issued a preliminary injunction against Local D474 as the imposition of a trusteeship did not prevent members of the Local from disaffiliating. While it may have caused the Local some injury through the forfeiture of assets, the forfeiture provision and the trusteeship provisions were part of the contract to which the Local agreed to be bound.

In *Local D461* the Local began to divert funds to the IWNA in November of 1986. Approximately the same time the Local conducted a vote on whether to disaffiliate from the International. The Local admitted that it ceased sending the required per capita tax to the International as required by the Constitution. Further, between November 1986 and May 1987, prior to the time that the NLRB certified the IWNA as the bargaining unit for Local D461, the Local sent the per capita tax collections in the amount of $42,000 to the IWNA instead of to the International. The retention and transfer of these funds violated provisions of the International Constitution to which the Local agreed to be bound. *Local D461*, 663 F.Supp. at 1034. Likewise the Local agreed to be bound by the forfeiture provisions of the Constitution. The Court issued an injunction in favor of the plaintiff International.

Similarly in *Local Lodge 714*, the court found that the Local engaged in financial malpractice by using its money to finance the activities of a competing union. *Local 714*, 663 F.Supp. at 1076. Local 714 claimed that it did not have to comply with the requests of the trustee as it was no longer a subordinate body of the International. The Local had voted to disaffiliate prior to the imposition of the trusteeship which they asserted was sufficient to exclude them from the trusteeship provisions. The Court found that the trusteeship could be enforced despite the fact that a vote of disaffiliation was taken prior to the establishment of the trusteeship. *Local 714*, 663 F.Supp. at 1076.

■ The facts of the instant case are quite similar to the facts of the above cases. Despite the fact that Local D405 is no longer affiliated with the International, if the trusteeship was valid at the time of imposition, the International is entitled to control the financial records and assets of the Local. *See International Brotherhood of Boilermakers v. Kelly*, 815 F.2d 912, 916 (3rd Cir.1987).

■ Defendants claim that a fact question remains as to whether the International Constitution applied in light of the disaffiliation. However, disaffiliation does not moot the question of the validity of the trusteeship. *Kelly*, 815 F.2d at 916. The International used the proper procedures in imposing the trusteeship and the trusteeship was imposed for permissible purposes other than to prevent secession of Local D405. Defendants further claim that a fact question remains as to the point at which the International ceased to be the bargaining representative for the Local. However, like the holding in *Local D461*, Local D405 was in violation of the Constitution up until the time of the certification by the NLRB of the IWNA as the new bargaining representative on January 15, 1987. The Local cannot on its own decide when the disaffiliation occurs. No fact question remains regarding this issue.

The question as to whether the Merger Agreement supercedes the Constitution on the issue of surrender of the assets of the Local is the only real fact issue in dispute between the parties. Plaintiff relies on Article V section 6 of the Constitution which provides any Local having less than ten members shall be automatically disbanded and all its funds and assets shall become the property of the International. It is undisputed that the NLRB certified the IWNA to be the bargaining agent for Local D405 on January 15, 1987. On this date Local D405 of the International Brotherhood of Boilermakers ceased to have 10 members and was automatically disbanded.

■ Defendants rely on Article V, section 3, of the Merger Agreement to support their contention that the Local may retain its assets. Article V, section 3, of the Merger Agreement provides that each Local will retain its Local treasury. The Merger Agreement also provides that the Constitution of the International is the supreme law of the merged organization and that all provisions of the Merger Agreement are binding. Any provisions of the Merger Agreement which conflict with the Constitution will expire at 12:01 a.m. on the convening date of the 28th consolidated convention which will occur in 1991. The clause in the Merger Agreement allowing local unions to retain their treasuries and

the clause in the Constitution requiring local unions to surrender their funds upon disbandment can be reconciled. *See International Brotherhood of Boilermakers v. Local Lodge D111,* 681 F.Supp. 1570 (S.D. Ga.1987) (order granting summary judgment); *International Brotherhood of Boilermakers v. Local Lodge D238, et al.,* 678 F.Supp. 1575 (M.D.Ga.1988) (order granting preliminary injunction). The Merger Agreement governs the effect of the Merger on local treasuries. Pursuant to the Merger Agreement, the Locals could retain their treasuries during their existence as a local union of the International Brotherhood of Boilermakers. The Merger Agreement, however, has no provision for the retention of local treasuries after the local has disbanded. When the local ceases to exist, the Merger Agreement no longer applies. The Constitution does address the contingency of disbandment of a Local and provides that in the event of disbandment the funds and assets of the Local are forfeited to the International. As the Local no longer exists, the individual members are not allowed to retain the treasury.

Local D405 retained its treasury while it was a member of the International. Now that Local D405 is no longer a local of the International Brotherhood of Boilermakers, it must surrender its funds and assets to the International in accordance with the Constitution which is the supreme law of the organization.

In considering a motion for summary judgment only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson,* 106 S.Ct. at 2510. The factual disputes to which defendants elude are not at issue. Defendants have admitted transferring and hiding money. Defendants have admitted being bound by the Constitution of the International. The record is clear that the NLRB did not certify the IWNA as the bargaining representative for the Local until January 15, 1987, yet defendants began paying taxes to the IWNA in October of 1986. Until the appropriate procedures were completed to remove the International as the bargaining representative, the existing certification must be honored. *Local D474,* 673 F.Supp. at 203.

While attempted secession alone may not be sufficient to justify the imposition of a trusteeship, defendants here have admitted to failures in at least three of the other areas charged as reasons for the imposition of the trusteeship. There is no dispute that the trusteeship was imposed according to the procedures in the International Constitution. There is no dispute that the trusteeship was imposed for a permissible purpose. There is no dispute that the Local received notice and a hearing on the question of the imposition of the trusteeship. The fact that the Cement Workers Division felt it was denied a right to elect its vice president at the convention is not an issue and does not give the Local the right to disaffiliate at will and ignore relevant provisions of the Constitution.

Neither have the defendants established that the Merger Agreement conflicts with the Constitution. The Merger Agreement has no contingency for the retention of assets upon disbandment. The Constitution addresses this issue and provides that the assets shall be forfeited. The Constitutional provision, being supreme, controls.

ACCORDINGLY,

IT IS ORDERED granting plaintiff's motion for summary judgment. Judgment in the following amounts is to be entered for plaintiff and against defendants in this matter:

(1) $14,856.22 representing per capita taxes owed the plaintiff between July 1986 through December 1986;

(2) $3,828.65 representing expenditures made by defendants for purposes other than those set forth in the International Constitution between September 1986 through December 1986.

The total amount to be paid to plaintiff is $18,684.87.

IT IS FURTHER ORDERED restraining defendants from disposing of or changing the status of any funds or property of the former Local Lodge D405 of the International Brotherhood of Boilermakers which are in their possession and control.

IT IS FURTHER ORDERED that defendants deliver to plaintiff any and all funds and property of the former Local Lodge which is in their possession or control.

This judgment disposes of all claims between the parties.