INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS and Trustee, Henry P. Groton, Jr. for Lodge No. D 522

v.

KELLY, Dennis and Maley, James and Kovish, Joseph and Finger, Edward and Tiwold, Alfred and Jost, William and Boisitz, John and Fegely, George, Jr. and Kalnas, Thomas and Miller, Larry.

Appeal of INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, et al.

No. 86–1334.

United States Court of Appeals, Third Circuit.

Argued Dec. 15, 1986.

Decided April 2, 1987.

As Amended April 8, 1987.

Margaret A. Browning (argued), Spear, Wilderman, Sigmond, Borish, Endy and Silverstein, Peter V. Marks, Sr., Meranze and Katz, Philadelphia, Pa., for appellants.

Charles C. Hansford (argued), Allentown, Pa., for appellees.

Before HIGGINBOTHAM and BECKER, Circuit Judges, and DUMBAULD, District Judge.*

### OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final judgment of the district court dismissing as moot the suit by appellants International Brother-

hood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers ("International") and Trustee Henry P. Groton, Jr. against the officers of one of International's locals. The suit sought (1) to enforce a trusteeship imposed by the International over Local Lodge D–522, in part for reasons of possible financial mismanagement; and (2) to compel the officers to relinquish control over all assets and financial records of the local. Prior to any decision in the suit, the members of the local, in a representation election, voted to be represented by another union, and the National Labor Relations Board certified that new union as the exclusive collective bargaining representative for the employees. Reasoning that the dissolution of the local over which appellants sought to impose a trusteeship left them without a viable claim, the district court dismissed their suit. We conclude that a decision as to the validity of the original trusteeship was necessary in order to determine who was entitled to control the assets at the time of decertification,—and therefore who is now entitled to control those assets.[1] We will accordingly reverse the district court's dismissal order and remand the matter for proceedings consistent with this opinion.

### I.

On April 22, 1985, the International President, based on initial informal reports, exercised his power under Article XVIII, § 3 of the International Constitution and placed Local Lodge D–522 under emergency trusteeship.[2] At that time, appellant Groton

---

* Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. There has been no formal declaration before this Court or, apparently, before the district court, of the value of the local's assets. At oral argument, however, the parties indicated that there is at least $69,000 in various accounts and other property of unspecified value at stake.

2. As a subordinate body of the International, the local and its officers were subject to the provisions of the International Constitution. *See* Appendix ("App.") at 79, 85, 90, 119–22 (Constitution of the International Brotherhood of Boilermakers, Iron Shipbuilders, Black-

smiths, Forgers and Helpers, Article I, § 1; Article III, § 1; Article V, § 6; and Article XXIII).

Article XVIII, of the International Constitution provides in relevant part as follows:

Section 3. In any situation where, in the judgment of the International President, grounds for the establishment of a trusteeship exist, or grounds for suspension of a subordinate body officer exist, and in addition the activities of the subordinate body or of its officers or membership are such as to create an emergency imminently threatening the welfare, funds or property of the subordinate body, then he may summarily place a subordinate body in trusteeship, subject to a subsequent hearing by the Executive Council as set forth in Section 1 of this Article.

App. at 113.

was appointed as the International Trustee to administer the affairs of the local. Groton accordingly relieved all local officers of their duties as of the date of imposition of the trusteeship and directed them to turn over to him control of local records and funds. In a letter dated April 26, 1985, the International President informed the membership that the emergency trusteeship had been imposed because the local's officers had participated in an effort to disaffiliate from the International and, furthermore, that there were "serious questions raised regarding possible financial malpractice." App. at 217.

Pursuant to the requirements of Article XVIII, §§ 1 and 3 of the International Constitution, the International Executive Council notified Groton that a hearing would be held on May 5, 1985, to determine whether the trusteeship should be continued beyond the period of the emergency order. Groton duly posted notice of the hearing throughout the local's workplace and also mailed notice of the hearing to each of the appellee officers.

Appellee officers refused at all times to acknowledge the validity of the trusteeship or to comply with the directives issued by the appointed trustee. On May 5, 1985, the scheduled hearing on whether to continue the trusteeship was held. Appellees declined to participate, however, choosing instead to rely on a letter from their attorney that was presented to the hearing officer at the commencement of the proceedings. The letter challenged the validity of the trusteeship on the ground that the International failed to provide adequate notice of the specific reasons underlying the imposition of the trusteeship. The hearing thus proceeded with testimony offered solely in support of the International and its trustee. Thereafter, the International Executive Council decided to extend the trusteeship.

Appellants, faced with the continuing non-cooperation of appellee officers with trustee Groton, filed a complaint in the district court for the Eastern District of Pennsylvania seeking to enjoin appellees from interfering with the administration of the trusteeship and to compel them to produce the local's financial books, records, and assets. *See* App. at 5–12. Appellants also moved for a preliminary injunction pending final resolution of their complaint. While that motion was pending, however, Local D–522's members voted to affiliate themselves with the International Brotherhood of Teamsters ("Teamsters"). The National Labor Relations Board subsequently certified that selection and designated the newly formed Teamsters local as the exclusive bargaining representative. The twice-postponed hearing on appellants' outstanding motion for a preliminary injunction was not held until October 4, 1985. On March 24, 1986, before a ruling on appellants' motion for preliminary injunction had issued, appellees moved the court to dismiss the complaint as moot. Finding that the International "[did not] have a viable claim in th[e] action when the Local over which [it] sought to impose a trusteeship [was] no longer a viable entity," the district court granted the motion and dismissed the action. App. at 332. The present appeal ensued.

## II.

Questions of mootness are considered under a plenary standard of review. *See, e.g., United States v. Yakima Tribal Court of the Yakima Indian Nation,* 794 F.2d 1402, 1405 (9th Cir.1986) (review of district court jurisdiction is *de novo*); *Sample v. Johnson,* 771 F.2d 1335, 1338 (9th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986) (*de novo* standard for reviewing questions of mootness and subject matter jurisdiction). Mootness analysis traditionally begins with "the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (quoting *Liner v. Jafco, Inc.,* 375 U.S. 301, 306 n. 3, 84 S.Ct. 391, 394 n. 3, 11 L.Ed.2d 347 (1964)); *see Jersey Cent. Power & Light Co. v. Town-*

*ship of Lacey*, 772 F.2d 1103, 1108 (3d Cir.1985). We have previously characterized this constitutional requirement as three distinct elements: "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution." *Dow Chemical Co. v. United States Environmental Protection Agency*, 605 F.2d 673, 678 (3d Cir. 1979). Another common formulation for determining whether a real controversy exists under Article III is that "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); *see also Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (same); *New Jersey Turnpike Auth. v. Jersey Cent. Power and Light*, 772 F.2d 25, 31 (3d Cir.1985) (same); *In re Kulp Foundry, Inc.*, 691 F.2d 1125, 1128 (3d Cir.1982) (same). To establish the existence of such a "live" issue, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937); *see Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *In re Kulp Foundry, Inc.*, 691 F.2d at 1129 n. 7. Most frequently, a claim is found to present either a "live" issue and a legally cognizable interest, or neither. *See, e.g., Murphy*, 455 U.S. at 481, 102 S.Ct. at 1183; *In re Kulp Foundry, Inc.*, 691 F.2d at 1129 & n. 7.

In addition to its threshold constitutional dimension, mootness doctrine incorporates prudential considerations as well. *See Kremens v. Bartley*, 431 U.S. 119, 128, 97 S.Ct. 1709, 1714, 52 L.Ed.2d 184 (1977); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 756 n. 8, 96 S.Ct. 1251, 1260 n. 8, 47 L.Ed.2d 444 (1976); *Wilkinson v. Abrams*,

627 F.2d 650, 658 (3d Cir.1980). These policy concerns "relat[e] to the court's discretion in matters of remedy and judicial administration." *Chamber of Commerce v. United States Department of Energy*, 627 F.2d 289, 291 (D.C.Cir.1980). Thus, in applying the mootness doctrine, courts, in addition to satisfying the requirements of Article III, "must answer the more policy-oriented question whether the parties before it have, at the time for decision sufficient functional adversity to sharpen the issues for judicial resolution." *Dow Chemical Co.*, 605 F.2d at 677–78. In operation, however, the mandatory constitutional aspects and the discretionary policy concerns of mootness analysis are often difficult to parse. Indeed, mootness is fundamentally a matter of degree; there is no precise test for ascertaining with precision whether a particular claim has become moot. *Cf. Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) ("The difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test."); *Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442, 465 (D.Fla.1980), *modified sub nom. Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982). Such a determination therefore becomes "an intensely factual inquiry," *Haitian Refugee Center*, 503 F.Supp. at 463, "guided primarily by pragmatic considerations." *In re Zacherl Coal Co.*, 9 B.R. 952, 955 (W.D.Pa.1981).

### III.

This Court has recently recognized that "[t]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Central Power and Light Co. v. State of New Jersey*, 772 F.2d 35, 39 (3d Cir.1985); 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533 at 261 (1984). The availability of effective relief is one measure of the existence of a continuing controversy between parties

with cognizable interests in the outcome.[3] *See, e.g., Jersey Central Power & Light v. Township of Lacey,* 772 F.2d at 1108. The availability of relief also may indicate the presence of a continuing effect of the alleged misconduct on a complainant—a fact that similarly supports the finding that a real, live controversy exists between sufficiently adverse parties and thus counsels against avoiding a decision on the legality of the underlying action. *See, e.g., Natural Resources Defense Council v. United States Envtl. Protection Agency,* 683 F.2d 752, 759 (3d Cir.1982); *Wilkinson,* 627 F.2d at 657; *Dow Chemical Co.,* 605 F.2d at 679 & n. 12. In the present case, because at least part of the relief requested by appellants' complaint before the district court remained available notwithstanding the local's decertification, and because, without that relief, the International faced possible dissipation of the assets it sought to protect,[4] we find that the district court's dismissal of this case as moot was erroneous.[5]

■ The gravamen of appellants' initial complaint was that the appellees were illegally withholding control of the local's records and assets in contravention of a trusteeship imposed, in part, to investigate possible financial mismanagement by ap-pellees. The issue of control required, in turn, a determination as to whether the trusteeship had been properly imposed and was itself a valid exercise of the International's authority. The question of the validity of the trusteeship, which would be dispositive of appellants' original claim, was not rendered moot by the subsequent disaffiliation since the proper focus of inquiry in the case before the district court was the validity of the trusteeship at the time of its extension on May 5, 1985. If the trusteeship was valid then, appellants are now entitled to control the financial records and assets of the local and to ascertain whether the appellee officers had breached their fiduciary obligation. That right is unaffected by any later disaffiliation. The instant dispute is therefore a real controversy between adverse parties with a cognizable legal stake in the outcome.[6]

Appellees seek to avoid a determination of the initial propriety of the trusteeship simply because the local was disbanded before the district court could hear and decide the case. The ability of the district court to grant appellants effective relief, if warranted on the merits of this case, however, supports our conclusion that this case is

---

3. In some situations, however, a dispute can be "so attenuated and remote as to warrant dismissal ... pursuant to the court's discretionary authority to grant or withhold ... relief." *Chamber of Commerce,* 627 F.2d at 292.

4. Although appellees contend that the funds and property at issue will be maintained until this dispute is resolved, they will be under no legal obligations with regard to that property if a dismissal of the case is finally entered. Appellees continue to argue that those assets belong to the newly formed local and not to the International. Subsequent management of the assets by appellees in light of a dismissal of the instant dispute could render them unavailable in a later action even if the court there found that they rightfully belonged to the International. Those assets are currently frozen by court order pending the outcome of this appeal. *See* App. at 4.

5. Moreover,
   [t]his court has previously identified three exceptions to the mootness doctrine which should be considered when deciding the reviewability of an appeal that is in some sense moot:

(1) whether the appellant has expeditiously taken all steps necessary to perfect the appeal and to preserve the status quo before the dispute becomes moot,
(2) whether the trial court's order will have possible collateral legal consequences, and
(3) whether the dispute is of such a nature that it is capable of repetition yet evading review.

*In Re Kulp Foundry, Inc.,* 691 F.2d at 1129. In this appeal, appellants' efforts to expeditiously resolve the dispute between the parties and to preserve the status quo have been frustrated by a total lack of cooperation from the appellees. In addition, dismissal would operate to give appellees complete control over the disputed assets without a determination of the legality of the trusteeship. Absent that determination, the issue presented before this Court and the district court satisfies the requirements of a real case or controversy.

6. It should be noted that appellants' complaint was brought against appellees individually and not against Local Lodge D–522. *See* App. at 5–12. Even with the decertification of the local, appellees continue to claim rights opposed to appellants' asserted interests.

not moot. *Cf. Securities & Exchange Comm'n v. Equity Servs. Corp.*, 632 F.2d 1092, 1094 (3d Cir.1980) (in appeal from an order enjoining lessors from bringing a lease-cancellation claim against a federal receiver, the case was not moot, notwithstanding the sale of the leases by the receiver, where the receiver held the proceeds from the sale and the right to the proceeds depended on whether appellant lessors had a right to cancel the leases); *Haig Berberian, Inc. v. Cannery Warehousemen*, 535 F.2d 496, 498 n. 1 (9th Cir.1976) (although arbitration had been completed, appeal which denied arbitrability was not moot when a ruling in favor of appellants would render the arbitration award unenforceable).

Other prudential factors counsel against dismissal as well. First, appellees' refusal to cooperate with the trusteeship has a continuing adverse effect on appellants, insofar as they are thus unable to investigate the local's financial practices or to manage its assets.[7] *See Jersey Cent. Power and Light v. Township of Lacey*, 772 F.2d at 1108; *Natural Resources Defense Council v. U.S.E.P.A.*, 683 F.2d at 759. In addition, a concern for the most reasonable and expeditious management and disposition of cases motivates us to reverse the district court's order of dismissal and to allow resolution of the underlying issues. The International has advised this Court that, if the district court's dismissal is upheld, it will file suit on similar issues against the same individual appellees, in part on the same jurisdictional grounds,[8] for the same relief, and in the same district court. On the facts of this case we are unable to see any benefit to the court or the parties in imposing such a formalistic exercise. *See, e.g., Dow Chemical Co.*, 605 F.2d at 680 ("To refuse to pass on the questions presented,

then, would require both the parties and the Court to undergo considerable additional expense and effort for no valid reason."); *cf. Washington Steel Corp. v. TW Corp.*, 602 F.2d 594, 598 (3d Cir.1979) (in appeal from an injunction against appellant bank's financing of a tender offer, the withdrawal of the offer did not moot the case where appellant indicated it would claim damages on the injunction bond, and where in that claim the same issues would be raised as were then before the court). Rather, the more prudent course is to remand to the district court for a determination whether the post-hearing continuation of the trusteeship was valid. If the trusteeship was valid, the district court shall proceed to fashion the appropriate relief. If, however, the district court concludes that the trusteeship was, as appellees have consistently contended, invalid, appellants would not be entitled to control of the local's financial records and assets under the original theory of their complaint.[9]

## IV.

For the foregoing reasons, the district court's dismissal of this case as moot will be reversed and the case will be remanded for proceedings consistent with this opinion.

---

7. Dismissing appellants' claim would also create at least the potential for dissipation or diversion of the assets at issue here. *See supra* note 4.

8. Appellants indicated at oral argument that a subsequent suit would rest on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), which along with § 302 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 462, form the grounds for the present complaint. *See* App. at 9.

9. In its order dismissing appellant's claim as moot, the district court indicated that "[p]erhaps plaintiffs have a separate cause of action under the terms of their constitution" with regard to control of the records and assets. Such a claim is not before this Court today. Accordingly, we pass no judgment on its validity.