**WILMINGTON FIREFIGHTERS LOCAL 1590, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS and Dennis M. Kirlin, on their behalf and on behalf of all others similarly situated**

**v.**

**CITY OF WILMINGTON, FIRE DEPARTMENT and James T. Wilmore, et al., the plaintiff class in Wilmore, et al. v. City of Wilmington, Civil Action No. 80–76, Appellants.**

No. 86–5749.

United States Court of Appeals,
Third Circuit.

Argued May 14, 1987.

Decided July 27, 1987.

Rehearing Denied Aug. 20, 1987.

---

adopted a race-based discriminatory scoring system for the fire department's promotional examination process leading to the 1984 promotional list. We find that the district court's injunction against promotions from the 1984 list is no longer of legal consequence, because of the expiration of the 1984 list with no promotions having been made therefrom. Therefore we will remand and direct dismissal of the complaint as moot.

## I.

In March, 1984, the City of Wilmington issued General Notices ("GNs") 84–2 through 84–8, providing the details of the 1984 Wilmington Fire Department promotional examination system. The GNs provided *inter alia* that the Board of Examiners would be responsible to comply with the terms of the consent decree in an earlier case in which a class of minority firefighters had challenged the fire department's promotional examinations for 1978 and 1980. *Wilmore v. City of Wilmington*, 533 F.Supp. 844 (D.Del.1982), *rev'd*, 699 F.2d 667 (3d Cir.1983). By the *Wilmore* consent decree, the city had agreed that future promotional exams would not have a disparate impact on minorities.

GN 84–3 provided a summary of the promotion process which began with the administration of two written components, the Administrative/Management Task Analysis ("AMTA") and the Problem Analysis and Presentation ("PAP"). After administration of the written tests, the Board of Examiners was to make a threshold ranking of candidates according to their qualification for further consideration. Certification as "well qualified for further consideration" would entitle candidates to an interview and record appraisal with the Chief of Fire. The GNs were non-specific as to how a candidate's threshold qualification category was to be determined, except that it was to be based on the performance of the candidates on the written compo-

Frederick H. Schranck (argued), Law Dept., City of Wilmington, Gary W. Aber (argued), Heiman & Aber, Wilmington, Del., for appellants.

Barry M. Willoughby (argued), Young, Conaway, Stargatt & Taylor, Wilmington, Del., for appellee.

Before GIBBONS, Chief Judge, MANSMANN, Circuit Judges, and McCUNE, District Judge.*

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this action for reverse discrimination in employment, the plaintiff firefighters claimed that the City of Wilmington had

---

nent. After the interview phase, candidates' final scores were to be calculated with the various factors given the following weights: PAP 60%, AMTA 25%, Interview/Record Appraisal 15%. Ties were to be broken by reference to an experience factor calculated by a method outlined in the GNs. The process was designed to yield a certified list to be used for promotions until the list is exhausted or until two years from the date of filing the certified list.

After the AMTA and PAP components were administered in May and June, 1984, the Board of Examiners adopted a threshold ranking system which excluded from eligibility for the "well qualified" group candidates whose scores fell below a specified minimum on either the PAP or the AMTA. One reason given for the adoption of this ranking system was that, according to statistical computations performed by the city's testing expert, a top down numerical ranking based on the combined PAP and AMTA scores would produce a significant disparate impact on minority firefighters as defined in Paragraph 16 of the *Wilmore* consent decree.[1]

After the candidates who were ranked "well qualified" had been interviewed, the testing expert informed the Board that a final ranking framework using the percentages outlined in GN 84-3 would produce a significant disparate impact on minority candidates within the meaning of paragraph 16 of the consent decree. Consequently, the city adopted a revised ranking system which resulted in members of the plaintiff class ranking lower on the final promotion list than they would have under the ranking system originally set forth in the GNs. Dennis Kirlin, the lead plaintiff in this class action dropped in promotional rank from seventh to forty-first under the revised system.

The plaintiffs then brought this action for reverse discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and pursuant to 42 U.S.C. §§ 1981 and 1983. The district court certified a class of all present and future uniformed employees of the Fire Department whose position on the 1984 promotion list or future lists was or may in the future be adversely affected by the city's interpretation of its obligation under the *Wilmore* consent decree. The plaintiffs claimed that the City of Wilmington adopted a race-based discriminatory scoring system for the Wilmington Fire Department's promotional examination process leading to the 1984 promotional list. The plaintiffs requested that the district court enjoin the city from using the 1984 promotion testing procedures to award promotions, and to direct the city to promote candidates based on the procedures originally outlined in the GNs. The city contended that its actions were required by its obligations under Paragraph 16 of the *Wilmore* consent decree.

The material facts were undisputed, and the parties filed cross-motions for summary judgment. The district court found that revision of the test scoring procedures as set forth in the GNs was not required by the terms of the *Wilmore* consent decree. Therefore the court found the revised pro-

---

1. The relevant portions of that decree read as follows:

16. *Future Promotional Examination.* The City of Wilmington, hereby agrees and certifies that all future promotion exams and procedures shall afford all minority members of the City of Wilmington Fire Department, full, complete, fair and equal promotional opportunities in keeping with 42 U.S.C. §§ 1981, 1983 and 2000e, *et seq.*, and the Wilmington Charter, and that such promotional exams and procedures shall not result in a disparate impact on minorities. Disparate impact shall, for the purposes of this compromise and settlement be considered to have occurred if the minority test taker promotional rate shall at any time be less than 80 percent of the white test taker promotional rate, as disparate impact will be considered to have occurred if the probability of the distribution of minority members, on any promotional list of the City of Wilmington Fire Department shall be less than five percent (5%) when compared to the distribution of white firefighters (notwithstanding the above, disparate impact will not be assumed if the comparison of promotional rates results yield an expected number of minority promotions less than one whole promotion without rounding up). *Wilmore, et al. v. City of Wilmington v. Local 1590 ("Wilmore")*, No. 80-76, (D.Del. June 14, 1983).

cedure to be a voluntary, race-conscious, affirmative action which, although clearly aimed at eliminating past practices of discrimination, "unnecessarily trammel[ed]" the interests of the individual non-minority plaintiffs, thereby failing to meet the general criteria for permissible race-conscious affirmative action identified in *United Steel Workers of America v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

Accordingly, on March 31, 1986, the district court denied the defendants' motions for summary judgment and entered summary judgment in favor of the plaintiffs. A preliminary order enjoined the promotion of any firefighters based on the 1984 list and required the parties to submit a proposed order outlining a final ranking list compiled in accordance with the court's opinion. On May 9, 1986, the court approved a final order incorporating a promotion list based on the scoring procedure originally announced in the GNs.

On May 13, 1986 the defendant city filed a motion for reargument. On June 16, 1986, the 1984 promotion list expired and was replaced by a new promotion list based on new tests. The expiration and replacement of the list occurred by virtue of prior contractual agreement unrelated to the pending litigation. By letter to the district court dated July 17, 1986, the city raised the contention that the lawsuit was mooted by the expiration of the 1984 promotion list. By opinion and order of September 29, 1986, the district court denied the defendants' motion for reargument and rejected the contention that the action was moot. The court found that "even though the action may be moot as to firefighters adversely affected by the expired list, including the named plaintiff, a controversy still remains with respect to unnamed and as yet unidentified members of the class who would be harmed by similar actions by the City in the future." *Wilmington Firefighters Local 1590, et al., v. City of Wilmington*, No. 84–400–JJF, slip op. at 1, (D.Del. September 29, 1986). This appeal followed.

## II.

■ We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the question of mootness is plenary. *International Brotherhood of Boilermakers, etc. v. Kelly*, 815 F.2d 912, 914–15 (3d Cir.1987).

■ A case or controversy is required for the exercise of judicial power under Article III of the Constitution. A case is moot when the parties lack a legally cognizable interest in the outcome. *Id.* We have recently reiterated that a central concern in determining questions of mootness is to determine whether all or part of the relief requested by the complaining party is still effectively available. *Id.* at 915–16.

We turn now to the question of whether any order of this court would provide meaningful relief from any misconduct by the defendants or from error by the district court.

## III.

The appellant argues that because of the expiration of the 1984 promotion list with no promotions having been made therefrom, no threatened or actual injury exists which could be corrected by any court order. The appellee argues that a live controversy exists because one purpose of the suit is to prevent the city from restructuring future promotional rankings in accordance with its erroneous interpretation of the *Wilmore* consent decree, and the certified class includes firefighters whose rank on future lists may be affected by the defendants' interpretation of its obligations under the *Wilmore* consent decree.

■ There was no record made in the district court except with respect to the procedures yielding the 1984 promotion eligibility list, which was designated by contract to be used for filling promotions until exhaustion of the list or its expiration two years after its filing. The relief requested by the defendants was an injunction against the use of the 1984 list and a mandate to promote candidates according to the procedures outlined in the GNs governing the production of the 1984 list. The

order appealed here applies only to replacement of the 1984 list. It is undisputed that the 1984 list expired pursuant to contractual agreement on June 15, 1986 and that no promotions were made therefrom or from the revised list ordered by the district court. Therefore, no injury in fact could have occurred. Since no future promotions will be made from the expired list or its court ordered replacement, no injury is threatened.

Our reversal of the district court's order would not reinstate the 1984 list. Our affirmance would not cause promotions to be made from the court ordered substitute. The district court order and substitute list ceased to be of legal effect upon the expiration of the 1984 list. Any order of this court would merely serve to advise the parties as to the legality or illegality of the specific set of procedures adopted to yield the 1984 list, a list which is no longer relevant to the legal relationship between the parties. Therefore, our opinion, based on a set of facts no longer operative, would be an advisory opinion prohibited under Article III. The controversy between the defendants and the plaintiffs ranked on the 1984 list is moot.

The result is no different for the members of the plaintiff class defined as firefighters whose rank on future lists may be affected by the defendants' interpretation of its obligations under the *Wilmore* consent decree. Any controversy as to future lists is as yet unripe. It is purely a matter of conjecture whether the city's interpretation of the consent decree would cause it to depart from the GNs or to adopt the same ranking procedures challenged here when confronted with a new set of examination scores. We can only hypothesize whether similar procedures applied to new scores would produce a similar affect on majority/minority promotional ranking.

### IV.

No justiciable controversy remains as to any member of the plaintiff class. Therefore we will vacate the district court's orders of March 31, 1986 and May 9, 1986 and remand with directions to dismiss the complaint.