**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, et al.**

v.

**Alexander J. SZOKE, et al.**

**Civ. A. No. 87–2147.**

United States District Court, E.D. Pennsylvania.

May 18, 1989.

Bruce Endy, Spear, Wilderman, Sigmond, Borish, Endy & Silverstein, Philadelphia, Pa., for plaintiff.

Bernard N. Katz, Meranze & Katz, Philadelphia, Pa., for defendant.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

This action arises out of a property dispute between two unions over the ownership of a tract of land located in Northhampton County, Pennsylvania.[1] Before the court is the motion of the plaintiffs for summary judgment.[2] Because I find that no genuine issues of material fact exist and that plaintiffs are entitled to judgment as a matter of law, I will grant plaintiffs' motion and enter summary judgment in their favor.

### I

*Factual Background*[3]

In July, 1983, the United Cement, Lime, Gypsum and Allied Workers International Union (Cement Union), an unincorporated association and labor organization,[4] purchased a tract of land in Allen Township, Northhampton County, Pennsylvania. The Cement Union erected a building on the Northhampton land to serve as its headquarters for District Council # 1.[5] Three trustees, defendants Alexander Szoke, William Martin and John Boisitz, Jr., held title to the property for the benefit of the Cement Union, an unincorporated association.

On April 1, 1984, the Cement Union entered into a merger agreement with International Brotherhood of Boilermakers, Iron Ship Builders, Forgers and Helpers, AFL-CIO (Boilermakers). As a result of the merger, those local unions which had formerly been affiliated with the Cement Union were placed by the Boilermakers into an organizational structure known as the Cement Division of the Boilermakers and, thereafter, all of the former Cement Union members became members of the Boilermakers. The district councils of the Cement Union ceased to exist, and, pursuant to the merger agreement, Cement became subsumed within the Boilermakers and lost its existence as a separate legal entity. Although, in accordance with the merger agreement, the Northhampton real property as well as all of the personal property, books, records, intangibles and other assets contained therein belonging to District Council No. 1 became the property of the Boilermakers, a deed to the Northhampton property was never actually executed in favor of the Boilermakers.

Difficulties arose between the Locals and the Boilermakers in August 1986 at the first Consolidated Convention following the merger. At the convention, there was disagreement over who was eligible to vote for the International vice president. The locals claimed that only members of the

---

1. Jurisdiction over this dispute is predicated on section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982), which provides, in pertinent part, "[s]uits for violation of contracts between an employer and a labor organization representing employees ... or between any such labor organizations, may be brought in any district court of the United States...."

2. I heard oral argument on the motion on April 10, 1989.

3. This case was initially assigned to Judge Huyett. During that time, Judge Huyett issued several opinions which constitute the law of the case to which I am of course bound. Accordingly, the factual matrix reviewed below has essentially been extrapolated from Judge Huyett's earlier findings. *See International Brotherhood of Boilermakers v. Szoke,* No. 87–2147, slip op., 1988 WL 54043 (E.D.Pa. May 25, 1988) (LEXIS, Genfed library, Dist. file); *International Brotherhood of Boilermakers v. Szoke,* No. 87–2147, slip op. (E.D.Pa. May 29, 1987) (LEXIS, Genfed library, Dist. file), *aff'd,* 835 F.2d 283 (3d Cir.1987).

4. The Cement Union was an unincorporated association and labor organization as those terms are used in Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5) (1982).

5. District Council # 1 encompassed the geographical area of Eastern Pennsylvania, Maryland and New Jersey.

Cement Union were to vote for its vice president. The Boilermakers, however, asserted that the vice president was to be elected by a vote from the entire membership at large. As a result of a decision against restricting eligible voters to the Cement Division of the Boilermakers, the former Cement Union President, Richard Northrip was not elected to a vice presidency of the Boilermakers. Northrip and those who supported him then formed the Independent Workers of North America (IWNA).

On or about December 26, 1986, defendants Szoke and Martin, after a decision to change their affiliation from Boilermakers to IWNA, and without Boilermakers' knowledge, executed a deed transferring title to the Northhampton property from themselves as trustees for District Council No. 1, United Cement, Lime, Gypsum and Allied Workers International Union to themselves as "Trustees for Independent Workers of North America, an unincorporated association," without consideration. IWNA thereafter recorded the deed in Northhampton County, Pennsylvania. On March 16, 1987, representatives of Boilermakers were locked out of and denied access to the premises and records contained therein by defendants.

Plaintiffs, Boilermakers and various members of its Board of Trustees, filed suit seeking preliminary and permanent injunctive relief. On May 14, 1987, after a hearing to consider plaintiffs' request for a preliminary injunction, the court issued a preliminary injunction compelling the defendants to return the property and records of the Boilermakers. *See International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Alexander Szoke,* No. 87–2147, slip op. (E.D.Pa. May 29, 1987) (LEXIS, Genfed library, Dist. file).[6]

## II

*Discussion*

Under the Federal Rules of Civil Procedure, summary judgment may be granted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To establish a genuine issue of material fact, the non-moving party must introduce evidence beyond the mere pleadings to create an issue of material fact on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence presented must be considered in a light most favorable to the non-moving party, *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986), and that party must receive the benefit of all reasonable inferences arising from that evidence. *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir.), *cert. denied,* 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

This case essentially involves a contract dispute between two labor organizations. The two contracts which together form the basis of the dispute are the merger agreement between the Boilermakers and the Cement Union[7] and the Boilermakers' constitution.[8] Article XXXIII, Section 3 of the

---

**6.** On May 29, 1987, the court denied defendants' motion to stay the preliminary injunction pending appeal to the Court of Appeals for the Third Circuit. On December 7, 1987, the Third Circuit affirmed the May 14, 1987 order granting plaintiffs' preliminary injunction. *International Brotherhood of Boilermakers v. Szoke,* 835 F.2d 283 (3d Cir.1987).

**7.** The merger agreement constitutes a contract between labor organizations pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982).

**8.** It is well established that union constitutions are contracts for purposes of section 301 jurisdiction. *See United Association of Journeymen v. Local 334,* 452 U.S. 615, 620, 101 S.Ct. 2546, 2549, 69 L.Ed.2d 280 (1981).

I note at the outset that although defendants persist in asserting that it should not be subject to the contents of the Boilermakers' constitution, nearly every court, in this circuit as well as throughout the country, which has confronted various issues arising from the merger between the Cement Union and the Boilermakers has

merger agreement provides, in pertinent part:

> Transfer and Title of Assets. On the effective date of the merger all property, real, personal, and mixed; and all rights, titles and interest; either legal or equitable; and any monies, funds, or property; tangible or intangible, of [Cement] and affiliated District Councils shall, by virtue of the merger, be transferred to and vested in the merged organization in accordance with the Constitution.

Article XXXVI, section 2 of the Boilermakers' constitution, provides, in pertinent part:

> The fund and properties of a subordinate body are trust funds for the benefit of its members and shall not be divided in any manner among the members of the subordinate body. Upon the surrender, forfeiture or revocation of its charter other than through consolidation, all funds belonging to such subordinate body shall be forwarded promptly to the International Secretary–Treasurer and all real estate and other property owned or held by such body shall be immediately transferred and conveyed by the proper legal instrument to the International Board of Trustees of the International Brotherhood.

Article IV, Section 2 of the Boilermakers' constitution, provides, in pertinent part:

> The individual members and their successors, as from time to time designated and constituting the Board of Trustees, shall have authority to hold in their names or in the names of their nominees, the legal title to all real and personal property owned, possessed and belonging to this International Brotherhood, in trust nevertheless, for the benefit of the International Brotherhood and members thereof. No member of the Board of Trustees or any successor thereof, through or under him, shall have or be vested with any personal right title, or interest in or to any of such property.

Recently, the Third Circuit considered these contracts—the merger agreement and the Boilermakers' constitution—in a slightly different context. *See International Brotherhood of Boilermakers v. Local Lodge D504*, 866 F.2d 641 (3d Cir. 1989) (holding, *inter alia*, that the locals were not entitled to retain its treasuries under the terms of the merger agreement and the Boilermakers' constitution). While examining these documents, the Third Circuit found that "construction" rather than "interpretation" should be used in evaluating the merger agreement and constitution. *Id.* at 645. It is well settled that "[w]hen the issue is one of 'construction' as distinguished from 'interpretation' of the contract, the issue is one of law." *Id.* (quoting *Ram Construction Co., Inc. v. American States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir.1984)).

■■■ In construing these documents, I find that the merger agreement and the constitution are clear and unambiguous on their face and that absent specific facts negating the efficacy of the documents, a basic presumption should exist that these documents are valid, controlling and binding upon these parties.[9] Because I find no

---

found both the merger agreement and the Boilermakers' constitution to be binding and controlling documents, holding that these documents apply to both the Boilermakers *and* the various Locals. *See, e.g., International Brotherhood of Boilermakers v. Local Lodge D504*, 866 F.2d 641, 643–47 (3d Cir.1989); *International Brotherhood of Boilermakers v. Local D238*, 865 F.2d 1228, 1235 (11th Cir.1989); *International Brotherhood of Boilermakers v. Local Lodge D405*, 699 F.Supp. 749, 754–55 (D. Ariz.1988); *International Brotherhood of Boilermakers v. Local Lodge D296*, 687 F.Supp. 469, 470 (D.Ariz. 1988); *International Brotherhood of Boilermakers v. Local Lodge D111*, 681 F.Supp. 1570–71 (S.D.Ga.1987), *aff'd*, 858 F.2d 1559, 1561–62 (11th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989); *International Brotherhood of Boilermakers v. Local Lodge D238*, 678 F.Supp. 1575, 1581–82 (M.D.Ga.1988).

9. Defendants contend, in their counterclaim and fifth affirmative defense, that the merger agreement between the Boilermakers and the Cement Union was breached and that, therefore, plaintiffs should be barred from obtaining the relief sought. By order dated May 5, 1989, I severed defendants' counterclaim and joined it with a related case pending before me (C.A. No. 87–7886). To the extent specific restitution—the return of the land—is a potential remedy for the purported breach, I find that this is not a case where specific restitution is available. It is well recognized that when the court believes "that

evidence in the record indicating anything to the contrary, this court will not disturb the apparent intent of the documents. The merger agreement is explicit in its language and directs that, pursuant to the merger of these unions, all property previously owned by the District Councils becomes the property of the Boilermakers. Further, the Boilermakers' constitution directs that upon the local union's disaffiliation from the Boilermakers, all assets and property shall be forfeited to the Boilermakers.[10]

Accordingly, because the only issues presented concern unambiguous contractual language and involve no genuine questions of material fact, and because the merger agreement and the Boilermakers' constitution clearly and unambiguously establish that the rightful owner of the Northhampton property is the Boilermakers, plaintiffs are entitled to judgment as a matter of law.

An appropriate order follows.

## ORDER

AND NOW, this 18th day of May, 1989, upon consideration of the motion of the plaintiffs for summary judgment pursuant to Fed.R.Civ.P. 56, the response of the defendants thereto, and upon examination of all evidence in the record including supporting memoranda, depositions and admissions from all parties, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED and DECREED that the motion of the plaintiffs is GRANTED and summary judgment hereby be entered in favor of plaintiffs International Brotherhood of Boilermakers (Boilermakers), Charles W. Jones, Donald Whan and Henry Harden and against defendants Alexander J. Szoke, William H. Martin, Marvin Wright, Steven Raysely, Jonathan Wolfel and Independent Workers of North America. All right, title and interest in premises hereinafter described, the postal address of which is R.D. #1, Nor–Bath Boulevard, P.O. Box 8, Northhampton, Pennsylvania

---

such relief would interfere unduly with the certainty of titles to land," the court may, in its discretion, refuse to grant specific restitution. 1 G. Palmer, Law of Restitution § 4.19 (1978). *See* E.A. Farnsworth, Contracts § 12.9 (1982). I find that even if defendants are able to prove that the merger agreement was in fact breached its remedy for such breach would be limited to money damages. Therefore, that issue, which is the gravamen of defendants' complaint in Civil Action No. 87–7886, will be given proper consideration at that time.

I will note, however, that it is far from clear whether the defendants have standing to raise the issue of whether the merger agreement was breached, as defendants admittedly were not a party to that agreement. The court takes judicial notice of the defendants' statements made in its brief to the Third Circuit filed in its appeal from Judge Huyett's issuance of a preliminary injunction: "[t]he IWNA is a completely separate and distinct entity from the former United Cement, Lime, Gypsum and Allied Workers Union and of course is also a separate and distinct entity from the International Brotherhood of Boilermakers itself. Plaintiffs may not drag in Defendant IWNA under Section 301 jurisdiction based upon the existence of a merger agreement to which it was not a party." Appellants' Brief at 34, *International Brotherhood of Boilermakers v. Szoke*, 835 F.2d 283 (3d Cir.1987) (No. 87–1288). Because I find that the issue before me in the case *sub judice* is a narrow one and involves only the question of the legal title to

the real property in question, I need not reach the issue of defendants' standing.

10. Earlier in this litigation, Judge Huyett, while examining whether a preliminary injunction should be issued in favor of the plaintiffs, evaluated the likelihood of plaintiffs' success on the merits, and found:

Upon the evidence presented thus far, it appears that the Boilermakers is the rightful owner to the property at issue. The merger agreement expressly provides that the property previously owned by the District Councils is now owned by the Boilermakers. When the merger occurred, title to the subject property passed to the Boilermakers. District Council No. 1, which ceased to exist at the time of the merger, has no ownership or possessory rights in this property, and Szoke's and Martin's transfer of title as trustees of the Cement Union, which no longer existed, to the IWNA has no legal validity.

*International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Alexander Szoke*, No. 87–2147, slip op. (E.D.Pa. May 29, 1987) (LEXIS, Genfed library, Dist. file), *aff'd*, 835 F.2d 283 (3d Cir. 1987).

Defendants correctly point out that Judge Huyett's findings were based only on the evidence produced up to that stage in the litigation. However, while nearly two years have passed since Judge Huyett's findings, I find the record devoid of evidence revealed since that juncture indicating that a different result should ensue.

18067, is and shall be transferred and conveyed in fee simple absolute to the legal trustees of the plaintiff Boilermakers for the sole benefit of the plaintiff Boilermakers. Defendants are hereby ORDERED to execute forthwith a deed conveying to the legally installed trustees of plaintiff Boilermakers the real property, whose current deed is recorded 1/20/87 in Deed Book 718, page 933 of the Recorder of Deeds of Northhampton County, Pennsylvania, the legal description of which is as follows:

*ALL THAT CERTAIN* parcel of land situate in Allen Township, County of Northhampton, Commonwealth of Pennsylvania, as shown as Lot 2 on the "Odenwelder Tract Minor Subdivision" recorded in the Northhampton County Recorder of Deeds Office in Map Volume page bounded and described as follows:

*BEGINNING* at an iron pin on line of lands now or late of Bethlehem Municipal Water Authority, said iron pin being distant the following two (2) courses and distances from a PK nail on the centerline of LR 175; S 6 degrees 32 fee 00 inches W for a distance of 19.10 feet to a point; S. 14 degrees 00 feet 00 inches W. for a distance of 44.97 feet to the said iron pin, thence continuing along the southern Right of Way of said LR 175 on a course S. 81 degrees 31 feet 05 inches W. for a distance of 293.70 feet to an iron pin on lines of lands now or late of the Lehigh White Cement Company, lands of which this lot was once a part, said iron pin being distant 60.00 feet on a course S 8 degrees 28 feet 55 inches E. from a PK nail on the centerline of LR 175, thence continuing along said line of lands now or late of the Lehigh White Cement Company on a course S. 8 degrees 28 feet 55 inches E for a distance of 210.0 feet to an iron pin, thence continuing along said lands now or late of the Lehigh White Cement Company on a course N 81 degrees 31 feet 05 inches E for a distance of 231.36 feet to an iron pin on line of lands now or late of the Township of Allen, thence along the same on a course N. 1 degree 10 feet 11 inches W. for a distance of 86.74 feet to an iron pin on said line of lands now or

late of the Bethlehem Water Authority, thence along the same on a course N 14 degrees 00 feet 00 inches E for a distance of 134.16 feet, said iron pin being the place of beginning.

*CONTAINING* 1.2307 Acres.